## City of Rutland v. McDonald's Corporation

[503 A.2d 1138]

No. 83-528

Present: **Allen, C.J., Hill, Peck and Gibson, JJ.**

Opinion Filed October 11, 1985

*Frank H. Zetelski*, City Attorney, Rutland, for Plaintiff-Appellant.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Gibson, J.** The City of Rutland appeals a judgment of the Rutland Superior Court granting McDonald's Corporation a variance by operation of law. We reverse.

The history of this matter is somewhat complicated. McDonald's initially sought a variance for commercial use of a 110-foot strip of land located in a residential zone on Woodstock Avenue in Rutland. On August 14, 1981, the Rutland Zoning Board of Adjustment (Board) issued a timely decision, by letter, denying McDonald's request. The letter, signed by the Board's chairman and its secretary, recited findings and conclusions. By cover copy,

notice of the decision was mailed to approximately twenty "interested persons." See 24 V.S.A. § 4464(b). No appeal was taken by any party.

On December 11, 1981, McDonald's submitted a "revised application," requesting only a 25-foot variance. After the Board approved the revised application, with conditions, on February 17, 1982, several interested persons appealed the approval to superior court pursuant to 24 V.S.A. §§ 4471, 4472(a). Meanwhile, McDonald's submitted a building permit application to the city's aldermen, who eventually approved the permit, with a proviso that they took no position on the 25-foot variance.

In July 1982, the city filed a separate suit against McDonald's in superior court, seeking a declaratory judgment delineating the city's legal rights and obligations regarding the variance. With its answer, McDonald's also filed a counterclaim against the city, asserting that because of an inadequacy in the original August 14, 1981 decision, the law "deemed" the variance to have been granted. See 24 V.S.A. § 4470(a) (relief requested is deemed to have been granted if the board does not render its decision within 45 days after completing the hearing). McDonald's asked the court to declare the 110-foot variance valid and final because no interested person had appealed that deemed grant. (McDonald's did not serve its counterclaim on any of the interested persons who had participated in the first hearing.)

The court agreed that the findings and conclusions recited in the original letter of denial were deficient. Equating inadequate findings with complete absence of findings, and the absence of findings with inaction, the court ruled in favor of McDonald's and awarded a 110-foot variance by operation of law under § 4470(a). In addition, the city's complaint was dismissed as a nonjusticiable controversy.

The city appeals. It argues that the superior court lacked jurisdiction to address McDonald's counterclaim. We agree and reverse; however, we affirm the court's dismissal of the city's complaint.

I.

After an application for a variance has been submitted, 24 V.S.A. § 4470(a) requires the Board to

render its decision, which shall include findings of fact, within forty-five days after completing the hearing . . . . If the board does not render its decision within the period prescribed by this chapter, the board shall be deemed to have rendered a decision in favor of the appellant and granted the relief requested by him on the last day of such period.

On the basis of this provision, McDonald's collaterally attacked the original letter of denial in the court below, arguing that inadequacies in the findings and conclusions that the Board issued with its original letter of denial resulted in a deemed grant of the variance by operation of law. McDonald's relied successfully on the case of *Potter* v. *Hartford Zoning Board of Adjustment,* 137 Vt. 445, 447, 407 A.2d 170, 171-72 (1979). See also *Benoit* v. *Town of Barre,* 142 Vt. 608, 458 A.2d 1120 (1983) (conditional use permit deemed granted because purported findings were merely conclusions of law and did not indicate to parties or appellate court what was decided or what considerations were addressed); *Benzie* v. *Town of Underhill,* 142 Vt. 263, 454 A.2d 1233 (1982) (variance deemed granted when board's decision contained no findings of fact).

In *Potter,* after the applicant obtained a building permit and poured the foundation of his home, the town zoning administrator discovered that the excavation had been mislocated, in violation of setback provisions. The applicant halted construction and requested a variance. Ten days after the final hearing, the zoning administrator, who also served as clerk, but not as a member, of the zoning board of adjustment, signed "findings of fact" that contained only conclusions reached by the board. Upon the applicant's timely appeal, the superior court held that this failed to satisfy the statutory requirement of findings. *Potter, supra,* 137 Vt. at 446, 407 A.2d at 171. On appeal, this Court interpreted the requirement of findings of fact in 24 V.S.A. § 4470(a) to necessitate " 'an indication of how the result was arrived at.' " *Id.* at 447, 407 A.2d at 172 (quoting *Punderson* v. *Town of Chittenden,* 136 Vt. 221, 225, 388 A.2d 373, 376 (1978)). Therefore, this Court held that the applicant "automatically received a variance when the zoning board of adjustment failed to comply with the mandate of § 4470(a)." *Id.* at 448, 407 A.2d at 172.

In equating a timely denial based on inadequate findings with the failure to issue a timely decision that results in a deemed

grant, *Potter* and *Benoit* placed great reliance on *Punderson, supra,* 136 Vt. at 225, 388 A.2d at 376. *Punderson,* however, was not a zoning appeal, but a tax appeal from a local board of civil authority. The holding in *Punderson* was expressly confined to the narrow issue of the board of civil authority's failure to comply with procedures set forth in 32 V.S.A. § 4404(c). *Punderson, supra,* 136 Vt. at 225, 388 A.2d at 376.

In tax appeals, the express statutory remedy, if findings are deficient, is to set the subject property in that year's grand list at the previous year's amount. *Id.* at 224, 388 A.2d at 375; 32 V.S.A. § 4404(c). This provision has no relevance to the remedies available to, and the procedure to be followed by, an applicant for a variance if the applicant considers the board's findings to have been deficient. In contrast with the one-year deterrent remedy under the tax appeal statute, the grant of a zoning variance causes permanent effects upon the municipality, interested third persons, and the comprehensive land use plan.

In a comprehensive land use plan, variances are merely privileged exceptions granted by the local zoning board as permitted under strict standards set by the legislature. *Galanes* v. *Town of Brattleboro,* 136 Vt. 235, 240, 388 A.2d 406, 410 (1978); *Town of Milton* v. *LeClaire,* 129 Vt. 495, 499, 282 A.2d 834, 836 (1971); see also *In re Maurice Memorials,* 142 Vt. 532, 536, 458 A.2d 1093, 1095 (1983) (no judicial relaxation of statutory requirements). "[I]mproper variances not only threaten neighborhood integrity and undercut the protective purposes of zoning, but they also challenge the objectives of comprehensive urban planning." Shapiro, *The Zoning Variance Power—Constructive in Theory, Destructive in Practice,* 29 Md. L. Rev. 3, 10 (1969); see also *Maurice Memorials, supra,* 142 Vt. at 535, 458 A.2d at 1095 (nonconforming uses are inconsistent with prime purpose of zoning, i.e., the orderly physical development of the community); 24 V.S.A. § 4302(a) (policy of chapter is to encourage appropriate development).

In the context of statewide and regional land use planning, 10 V.S.A. §§ 6001-6092, the legislature has given local boards and superior courts authority to grant variances from local zoning ordinances only if certain specified findings are made. 24 V.S.A. §

4468(a);[1] *LeBlanc* v. *City of Barre,* 144 Vt. 369, 373, 477 A.2d 970, 972 (1984) (all five elements must be met to obtain a hardship exemption).

▪ This Court has often explained that findings are required in order that the board will adequately communicate " 'how the result was arrived at,' " not only for the parties, but also for the reviewing court.[2] *Potter, supra,* 137 Vt. at 447, 407 A.2d at 172 (quoting *Punderson, supra,* 136 Vt. at 225, 388 A.2d at 376). For this reason, we adhere to the statement in *Potter* that findings

---

[1] 24 V.S.A. § 4468(a) provides:

> (a) On an appeal under section 4464 or section 4471 of this title wherein a variance from the provisions of a zoning regulation is requested for a structure that is not primarily a renewable energy resource structure, the board of adjustment or superior court may grant variances, and render a decision in favor of the appellant, if all the following facts are found and the finding is specified in its decision.
>
> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located;
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;
>
> (3) That the unnecessary hardship has not been created by the appellant;
>
> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare; and
>
> (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.

[2] Findings serve to: (1) facilitate judicial review; (2) prevent judicial usurpation of administrative functions; (3) assure more careful administrative consideration; (4) help parties plan their cases for rehearings and judicial review; and (5) keep administrative agencies within their jurisdiction. *Melrose Park National Bank* v. *Zoning Board of Appeals,* 79 Ill. App. 3d 56, 60, 398 N.E.2d 252, 256 (Ill. App. Ct. 1979) (quoting 2 K. Davis, Administrative Law Treatise § 16.05); see also *Fields* v. *Kodiak City Council,* 628 P.2d 927, 933-34 (Alaska 1981) (similar considerations recited).

should be sufficient to inform interested persons of the reasons for the decision.

The purpose of the 45-day rule is to encourage prompt consideration of the application within a time certain. *Glabach* v. *Sardelli,* 132 Vt. 490, 494, 321 A.2d 1, 4 (1974); *Lizak* v. *Faria,* 180 N.J. Super. 248, 253, 434 A.2d 659, 661 (N.J. Super. Ct. Ch. Div. 1981). This interest in prompt action must be balanced against the state's "paramount obligation to promote and protect the health, safety, morals, comfort and general welfare of the people." *La Salle National Bank* v. *City of Chicago,* 5 Ill. 2d 344, 350, 125 N.E.2d 609, 612 (1955); see *Galanes, supra,* 136 Vt. at 240, 388 A.2d at 410 (zoning authority must be exercised with reference to the public health, safety, morals and general welfare) (citing 24 V.S.A. § 4302(a)). We note that other jurisdictions take a more pragmatic approach under 45-day notice requirements similar to Vermont's. See, e.g., *Packard* v. *Commonwealth,* 57 Pa. Commw. 322, 426 A.2d 1220, 1221 (Pa. Commw. Ct. 1981) (45-day notice requirement satisfied where timely decision issued though findings and conclusions of law were late or absent); *Lizak, supra,* 180 N.J. Super. at 256, 434 A.2d at 662-63 (where there is a reviewable record, approvals by inaction following hearing can be appealed "like other variance grants," leaving open the question whether substantive judicial review is permitted in a case of "total inaction" where there has been no hearing). See also 24 V.S.A. § 4473 ("It is the purpose of this chapter to provide for review of all questions arising out of or with respect to the implementation by a municipality of this chapter.").

■ Although the 45-day rule of 24 V.S.A. § 4470(a) provides an incentive for local boards to issue timely decisions, we conclude that the legislature did not intend that provision to insulate from review timely decisions based upon inadequate findings. A timely denial under 24 V.S.A. § 4470(a) is not equivalent to a failure to render a decision. In this respect, to the extent they are inconsistent herewith, *Potter, Benoit,* and *Benzie* are overruled.

■ After a timely denial, no matter how deficient the findings, "the exclusive remedy of an interested person . . . shall be . . . appeal to a superior court from an adverse decision . . . ." 24 V.S.A. § 4472(a). "Upon the failure of any interested person . . . to appeal to a superior court under section 4471 of this title, all interested persons affected shall be bound by . . . such decisions of the board, . . . and shall not thereafter contest, either directly

or indirectly, such . . . decision[s] of the board in any proceeding . . . ." 24 V.S.A. § 4472(d).

Having failed to challenge the board's letter of denial by the exclusive remedy of direct appeal, McDonald's became bound by that denial. 24 V.S.A. § 4472(d).

██ Not only is the board's letter of denial now res judicata regarding the original application, Restatement (Second) of Judgments § 83 (1982), but the City is also correct in arguing that the superior court lacked authority to consider the collateral attack because the legislature only gave the superior court jurisdiction over direct appeals. 24 V.S.A. §§ 4471-4473. Further, McDonald's counterclaim was not properly before the court because Vermont's Declaratory Judgments Act, 12 V.S.A. §§ 4711-4725, does not enlarge the subject matter jurisdiction of the courts. *Trivento* v. *Commissioner of Corrections*, 135 Vt. 475, 478, 380 A.2d 69, 72 (1977); *Gifford Memorial Hospital* v. *Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480, 483 (1955).[3]

## II.

McDonald's also raises, for the first time on appeal, a claim that the number of signatures on the original August 14, 1981 letter of denial was insufficient, converting the denial into a "deemed" grant. McDonald's cites *In re 66 North Main Street*, 145 Vt. 1, 3, 481 A.2d 1053, 1055 (1984).

██ Not only was this claim not raised by a direct appeal following the denial, but it was also not submitted to the court below as part of McDonald's initial collateral attack. It will thus not be considered on appeal. *Lockwood* v. *Bougher*, 145 Vt. 329, 330, 488 A.2d 754, 755 (1985).

*The dismissal of the declaratory judgment action is affirmed; judgment on the counterclaim is reversed, and the counterclaim is dismissed.*

---

[3] Had McDonald's filed a direct appeal, as required by 24 V.S.A. § 4472, a failure to serve the interested third parties who had appeared below would have become immediately apparent. In their absence they cannot be collaterally estopped, Restatement (Second) of Judgments, *supra*, § 83(2), their interests not being adequately protected by the municipality, which must be impartial. *Corbin District Property Owners Association* v. *Spokane County Board of Adjustment*, 26 Wash. App. 913, 916, 614 P.2d 1313, 1315 (1980).