## In re Vermont Gas Systems, Inc.

[549 A.2d 627]

No. 86-086

Present: **Allen, C.J., and Barney, C.J. (Ret.), Keyser and Underwood, JJ. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed May 20, 1988

*John T. Sartore* and *Charles E. Finberg* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellant.

*William E. Wargo, Winooski City Attorney*, Winooski, for Defendant-Appellee.

*Jeffrey L. Amestoy, Attorney General*, and *Merideth Wright, Assistant Attorney General*, Montpelier, for amicus curiae Environmental Board.

**Allen, C.J.** In November of 1985, the Vermont Environmental Board (Board) issued an Act 250 land use permit to Vermont Gas Systems, Inc. (VGS), authorizing the expansion of VGS's transmission and distribution system in the cities of Burlington and Winooski, as well as in nine other towns. The permit took the form of a "master permit" and required that VGS warrant all work involving road pavement cuts for a period of three years. VGS appeals, and Winooski cross-appeals. We reverse.

The primary questions presented on appeal are jurisdictional. Contending that the Board exceeded its authority under Act 250, VGS argues that neither its existing distribution system nor its potential expansion comes within the scope of the Act. VGS also raises issues regarding procedural irregularities below, municipal standing, and the legal basis for the permit's warranty condition. On cross-appeal, Winooski maintains that the Board erred by refusing to assert jurisdiction over VGS's repair and maintenance activities in addition to its proposed expansion.

I.

On May 31, 1984, VGS filed an application with the Vermont Industrial Development Authority (VIDA), seeking revenue bonds to support its capital improvements over a three-year period. The VIDA application included a "Project Description" that contemplated two types of activities: the repair of existing gas distribution lines and the expansion of the transmission and distribution network.

Because VIDA requires assurances that proposed projects will comply with all environmental laws, VGS sent a letter of inquiry to the District Coordinator of the District Environmental Commission (Commission), requesting an opinion as to whether the proposed repair and expansion of its network would be subject to Act 250 jurisdiction. The Coordinator offered an informal, oral opinion to the effect that the expansion work was subject to Act 250 review while the repair work was not.

In December of 1984, VGS filed an application with the Commission for an Act 250 permit to proceed with the expansion portion of the three-year project and listed eighteen areas where the expansion might take place. After a hearing, a generalized "master permit" was granted, requiring the filing of specific

amendment applications prior to the commencement of construction on each particular site.

The City of Winooski, which had not appeared at the hearing before the Commission, filed a motion to alter the decision, arguing that VGS's repair activities, like its expansion work, should be held subject to Act 250 review. This motion was denied, in part because of Winooski's failure to appear at the earlier hearing, and Winooski appealed to the Board. VGS cross-appealed to the Board, questioning the basis for Act 250 jurisdiction over its expansion work.

In the proceedings before the Board, VGS alleged that its self-professed, three-year expansion project was actually nothing more than a loose grouping of possible developments in unrelated areas. Because VIDA only backs financing for three-year "projects," VGS claimed that it had simply speculated as to areas of potential development over the next three years and combined these items of hypothetical capital spending into a nominal project for its VIDA application. VGS alleged further that it was only VIDA's concern regarding environmental law that led to the Act 250 permit application for the purported project. VGS requested that the Board make findings to this effect, but the Board declined to do so.

The Board found instead that the project proposed expansion of VGS's distribution systems in the municipalities of Winooski, Burlington, St. Albans, Georgia, Milton, Colchester, Essex, Williston, South Burlington, and Shelburne. Because installation of the approximately 130,380 linear feet of gas distribution line would require existing highway rights-of-way fifteen feet wide, the Board calculated that the project would involve 44.9 acres of land. A small portion of the proposed gas mains and many of the individual service connections were to be installed under the paved portion of highway rights-of-way in the various municipalities, and the Board found that VGS's expansion activities "may have an impact on municipal services and public road investments."

Based on these findings, the Board concluded that VGS's existing transmission and distribution system qualified as a "pre-existing development" under Act 250. It then determined that, while VGS's proposed repair activities did not trigger Act 250 jurisdiction, the expansion project did, qualifying as a substantial change to a pre-existing development.

Because of the unique and uncertain nature of the proposed expansion, the Board adopted the Commission's master permit concept, noting that such a procedure would allow analysis of system-wide impacts and the use of uniform permit conditions to mitigate overall adverse effects. The Board amended the Commission's permit, however, by detailing specific rules and procedures.

Finally, after making extensive findings regarding the impact of pavement cuts and subsequent patching on municipal roadways and traffic safety, the Board imposed an additional permit condition that VGS warrant all pavement patching work for a period of three years. The order expressly allowed the affected municipalities to impose their own regulatory standards upon VGS's excavation activities, however. The Board then issued an amended land use permit — involving extensive modifications of the Commission's master permit — and VGS brought the instant appeal.

## II.

The threshold question on appeal involves the underlying basis for the Board's assertion of jurisdiction under the provisions of 10 V.S.A. §§ 6001-6092, otherwise known as Act 250. In pertinent part, § 6081(a) of the Act dictates that: "No person shall . . . commence construction on a . . . development . . . without a permit." Section 6001(3) defines "development" as, among other things, "the construction of improvements on a tract or tracts of land, owned or controlled by a person, involving more than 10 acres of land within a radius of five miles of any point on any involved land, for commercial or industrial purposes."

Here, because VGS's transmission and distribution system was largely in place when the statutory scheme was enacted, a jurisdictional determination as to the expansion project requires a two-fold inquiry. First, the system must still qualify as a development, known in these circumstances as a "pre-existing development." See 10 V.S.A. § 6081(b); E.B. Rule 2(0). Second, the proposed activity must constitute a "substantial change" to the pre-existing development under § 6081(b).

VGS contends that its network cannot be characterized as a development within the meaning of the Act because the evidence did not establish that VGS owned or controlled the requisite ten or more acres within a five-mile radius. The Board ruled otherwise, multiplying the 266 miles of pre-existing gas main by the

average fifteen feet of municipal right-of-way' occupied by VGS during installation. VGS argues that no legal ownership or control of this tract was shown at the hearing because no deeds were produced and because VGS can have no property interest in the city streets. They also observe that, even if "control" means only temporary physical control, the Board's calculation of total acreage could have been accurate only if the 266 miles of line had been installed simultaneously.

We do not resolve this issue because, even assuming that the Board was correct in its conclusion that the expansion project would constitute a substantial change to a pre-existing development, its assertion of jurisdiction was premature. Under the Act, jurisdiction does not attach until construction is about to commence. See 10 V.S.A. §§ 6001(3), 6081(a); *In re Agency of Administration*, 141 Vt. 68, 78, 444 A.2d 1349, 1354 (1982). Here, VGS points to evidence in the record indicating that it had no specific plans establishing the precise location, the method of construction, or the extent of the work to be done in the expansion. It contends that the Board erred in refusing its requests to make findings in this regard. But no in-depth scrutiny of the record is required with regard to this question, because the Board's stated conclusions reveal that both the Commission and the Board struck too quickly in asserting Act 250 jurisdiction in this case.

In its opinion, the Board explained its imposition of the master permit procedure by stating:

> [I]t is likely that each [distribution main] extension will be subject to Act 250 jurisdiction. . . . [T]herefore, whether or not a "plan" is now in existence does not alter the conclusion that, prior to the commencement of construction, VGS will in all likelihood have to secure land use permits for new extensions to its gas distribution network. VGS must agree that Act 250 review of these segments will be far more efficiently performed through the "master permit" process. . . . Should VGS wish, it is entitled to defer each jurisdictional ruling until such time as VGS has prepared site-specific construction details with regard to each proposed distribution main extension. Once these plans are prepared, VGS can then inquire of the District Commission concerning jurisdiction over each segment and submit a land use permit application for review, prior to the commencement of construc-

tion, should the Commission conclude that a proposed distribution main extension constitutes a "substantial change."

This statement can be characterized more easily as an advisory opinion regarding probable jurisdiction than as an assertion of statutory authority. We also note the Board's incomplete "substantial change" analysis, in which it concluded that:

> In determining the likelihood of impacts under the ten criteria [10 V.S.A. § 6086] for jurisdictional purposes, we do not qualitatively or quantitatively evaluate the extent of those impacts. The extent of a project's impacts . . . must be deferred to the appraisal of an application under § 6086(a).

While we agree that the master permit approach could have advantages — including efficiency, the promotion of system-wide impact analysis, and the facilitation of uniform permit conditions — it does not follow that the Board has been empowered by the Legislature to assert jurisdiction on this basis. An administrative agency's rule-making authority cannot support an expansive interpretation of its own powers. See *In re Agency of Administration*, 141 Vt. at 76, 444 A.2d at 1352.

This Court has previously observed that jurisdiction under Act 250 is triggered "only when the activity was about to impinge on the land" and attaches only to "activity which has achieved such finality of design that construction can be said to be ready to commence." *Id*. at 78-79, 444 A.2d at 1354. Here, the Board recognized that site-specific construction details regarding VGS's expansion were not yet available. Therefore, we hold that the Board, and earlier the Commission, lacked jurisdiction in this matter; accordingly, their orders are vacated as void ab initio. Our disposition of the jurisdictional issue renders consideration of other questions raised by VGS unnecessary.

## III.

On cross-appeal, Winooski urges that the Board erred in concluding that VGS's repair and maintenance activities were not subject to review under Act 250. Because the proposed replacement of existing gas mains will, like the expansion project, require significant excavation and patching of paved roadways, Winooski argues that this work should also be considered a

substantial change to pre-existing development. We do not reach the issue because it is not properly before this Court.

As we have already noted, this question has been focused upon only intermittently in the course of the underlying litigation. It was first raised by VGS in its letter to the District Coordinator requesting an opinion on the applicability of Act 250. The Coordinator rendered an informal, oral opinion that VGS's repair and maintenance activities were outside the scope of the Act. Therefore, VGS's subsequent application to the Commission requested a permit solely for the expansion project. Although the attached project summary mentioned the related repair activities, this reference was in the context of the understanding that Act 250 did not apply to those activities. The Commission neither considered nor ruled upon the repair and maintenance project, and the land use permit did not refer to it. Because the permit procedure was the first point at which Act 250 jurisdiction was invoked, the repair and maintenance question was never brought before the administrative tribunal. Winooski cannot maintain an appeal regarding a question that never became an issue and was never ruled upon. Thus, the Board had no appellate jurisdiction to decide the question, and it is not properly before this Court.

*The judgments of the Board and the Commission are reversed, and their orders are vacated.*