### Howard Delozier, M.D. v. State of Vermont

[631 A.2d 228]

No. 92-532

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed April 30, 1993

Motion for Reargument Denied July 15, 1993

*S. Crocker Bennett, II* and *Joseph E. Frank* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, and *Geoffrey A. Yudien*, Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Allen, C.J.** The State appeals from a grant of summary judgment ordering the Board of Medical Practice to dismiss charges of immoral or dishonorable conduct brought before the Board against the licensee. The trial court concluded that an earlier determination by the Board that it lacked subject matter jurisdiction was res judicata and barred a subsequent investigation, and that, in any event, the Board lacked jurisdiction to hear the matter. We reverse.

On January 26, 1990, an investigator for the Board of Medical Practice informed the Board that licensee had been arraigned on a charge of sexual assault of a female under the age of sixteen. On January 29, 1990, the Board sent a notice to licensee that a complaint had been filed and an investigation would be commenced. Licensee's attorney asked the Board to close the file because licensee's conduct did not fall within the statutory criteria of unprofessional conduct listed in 26 V.S.A. § 1354. The investigatory committee considered this request and, after obtaining information as to the conditions of licensee's release from criminal charges, recommended to the Board that it close the file on licensee. The Board met on May 2, 1990, voted to close licensee's file, and on June 13, 1990, wrote a letter to licensee informing him that the file had been closed due to lack of jurisdiction.

On August 26, 1991, the Board informed licensee that a new file had been opened on him as a result of an article alleging that the University Health Center had suspended him for six months. On November 6, 1991, the Board issued charges specifying that licensee had engaged in immoral and/or dishonorable conduct under 26 V.S.A. § 1398. Licensee's motion to dismiss was denied. The Board ruled that neither res judicata nor collateral estoppel applied to the Board's prior determination because the Board had not been acting in its judicial capacity. Licensee brought an action for extraordinary relief under V.R.C.P. 75(a), and the superior court granted his motion for summary judgment. The State appeals.

## I.

The State first argues that the Board's letter closing the initial investigatory file due to a lack of jurisdiction did not have a res judicata effect on future investigations of licensee's conduct by the Board.

The doctrine of res judicata provides that a valid and final judgment in favor of one party bars another action by the other party on the same claim. Restatement (Second) of Judgments § 19 (1982); see *Hill v. Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 31 (1974). Res judicata will apply to dismissals for lack of jurisdiction. See *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980). The United States Supreme Court has held that the doctrine of res judicata applies to administrative decisions "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966). Similarly, the Restatement (Second) of Judgments § 83 states that administrative adjudicative decisions have res judicata effect only where "the proceeding resulting in the determination entailed the essential elements of adjudication." These elements include adequate notice to interested parties, the right of parties to present evidence and legal argument, final judgment, and procedural elements necessary to afford fair determination of the matter in light of the magnitude and complexity of the matter. *Id.*

This Court has previously adopted § 83 of the Restatement and given res judicata effect to administrative adjudicatory decisions. *City of Rutland v. McDonald's Corp.*, 146 Vt. 324, 331, 503 A.2d 1138, 1142 (1985); see also *In re Carrier*, 155 Vt. 152, 158, 582 A.2d 110, 113 (1990) (giving res judicata effect to administrative adjudicatory decision but not based directly on § 83 of Restatement). As other courts have held, however, administrative decisions that do not entail the essential elements of adjudication will not have res judicata effect. E.g., *International Union of Operating Engineers v. Sullivan Transfer, Inc.*, 650 F.2d 669, 675 (5th Cir. 1981) (administrative determination was not directly appealable, did not mark end of process within agency and was not binding and therefore was not

res judicata); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1087 (S.D.N.Y. 1988) (administrative hearing had no cross-examination, a minimum of evidence and limited argument and therefore was not res judicata); *Shea v. State Employees' Retirement Comm'n*, 368 A.2d 159, 162 (Conn. 1976) (because commission had power to reconsider finding that plaintiff was eligible to receive disability benefits, even though such finding was initially approved by commission, finding was not res judicata).

The initial investigation against licensee was commenced as the result of a letter complaining that licensee had been arraigned for sexual assault. According to the Board's practice, this complaint was docketed and a file was opened. See Board of Medical Practice Rule (BMP Rule) 5.1.3. Licensee was informed that the Board had commenced an investigation. After receiving licensee's letter asking to close his file because the Board lacked jurisdiction, the investigatory committee met, obtained additional information about the conditions of licensee's release from criminal charges, and recommended to the Board that the file be closed.

■ Under the Board's rules, the investigatory committee may make one of the following four recommendations to the Board: closing the file, in which case the file may be reopened if new evidence is received or a new complaint is made; settling the case; commencing prosecution of the case; and, in the case of extremely dangerous conduct, summarily suspending the license. BMP Rule 5.4.1. The due process requirements associated with the Board's adjudicatory decisions do not apply unless the Board decides to prosecute, in which case the Board will serve a formal notice of charges on the licensee, provide opportunity for response, conduct a hearing and prepare a written decision from which the licensee, the State or complainant may appeal. BMP Rules 5.5.1 — 5.5.3, 5.6.2.

■ Here, the Board's actions did not reach the stage where the Board functioned as an adjudicatory body. No charge was brought in the initial investigation; thus, the matter did not proceed to the prosecutorial stage. The Board did not issue a formal notice of charges, no due process rights attached to licensee, licensee was not asked to present evidence, there was

no hearing and there was no final ruling. Therefore, the Board's decision that it lacked jurisdiction did not bar future prosecution of licensee. The principles of res judicata do not apply in the present case because the Board's initial decision was not an adjudicatory decision.

## II.

The court also concluded that because licensee's conduct was not covered by 26 V.S.A. § 1354 as it existed at the time of the alleged misconduct, the Board lacked jurisdiction over the licensee. It further held that the Board's Rules of Medical Practice limited the Board's disciplinary authority to the types of conduct proscribed in § 1354. Section 1354 proscribed only that conduct which occurred in the practice of medicine or in the course of obtaining a license to practice medicine.

The State contends that 26 V.S.A. § 1398 gives the Board jurisdiction to suspend or revoke the license. We agree. The statute provides:

> The board may refuse to issue [a] license[] . . . for any other immoral, unprofessional or dishonorable conduct. For like cause, . . . the board may suspend or revoke any certificate issued by it.

Licensee argues that this statute is in direct conflict with the Board's enumerated powers under subchapter 2 (Board of Medical Practice), which limit the conduct for which the Board may revoke licenses to the types of unprofessional conduct listed in § 1354. Licensee argues that the words "immoral" and "dishonorable" are mere surplusage, and that the Board's powers are limited by the more specific statute, § 1354.

Section 1398, however, continues to govern the criteria for licensing. The Board has the power to deny a license for immoral or dishonorable conduct. Section 1398 cannot be read to allow the Board to deny a license for immoral conduct but not allow the Board to revoke a license for the very same conduct. Where a statute's meaning is plain on its face, this Court will enforce the statute according to its terms. *Burlington Electric Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335–36, 576 A.2d 450, 452 (1990). The plain meaning of the statute gives the

Board power to revoke a license for immoral or dishonorable conduct. Thus, the Board has jurisdiction to pursue a charge against licensee under § 1398.[1]

Licensee also argues that the Board's powers under § 1354 and § 1398 are coextensive. The structure of the act does not support this argument. First, § 1354 and § 1398 lie in different subchapters of the act. Section 1354, found in subchapter 2, enumerates the acts constituting "unprofessional conduct," which, at the time of licensee's conduct, were limited to those acts arising out of a licensee's acts as a physician. Thus, subchapter 2 governs the Board's powers to monitor the licensees' professional conduct in order to maintain a high level of professionalism. Section 1398, found in subchapter 3, empowers the Board to determine the personal and professional qualifications of individuals who may obtain and hold a license. Thus, the two statutes serve different functions within the act.[2] Further, the two statutes provide for different penalties. Unprofessional conduct under subchapter 2 is punishable by a wide range of sanctions, including reprimand and conditioning, limiting, suspending or revoking the license. 26 V.S.A. § 1361. Immoral or dishonorable conduct, under subchapter 3, is sanctionable only by suspension or revocation or a refusal to issue a license to an

---

[1] The dissent contends that the history of the statutory provisions supports licensee's position. We think otherwise. Prior to the 1976 amendments, § 1399 defined "unprofessional or dishonorable" conduct to include deceptive advertising, intemperate use of drugs or alcohol adversely affecting the judgment of the user, and conviction of any offense involving moral turpitude. Under the 1976 amendment, § 1399 was repealed and deceptive advertising and intemperate use of drugs or alcohol were included within the § 1354 definition of unprofessional conduct. The power to suspend or revoke a license for immoral or dishonorable conduct under § 1398, however, was not eliminated or modified.

[2] The dissent argues that §§ 1354 and 1398 are inconsistent and that the legislature intended the new § 1354 to provide specific grounds for license revocation. The dissent assumes that the legislature intended to permit revocation only for conduct committed in the course of medical practice, which is governed by subchapter 2. The legislature did not repeal § 1398, however, when it amended § 1354 and repealed § 1399. We will not assume the legislature erred by neglecting to repeal § 1398. Rather, we assume the legislature did what it intended to do. The plain language of § 1398 after the 1976 amendments to Title 26, chapter 23 continue to permit the suspension or revocation for non-practice-related conduct.

applicant. 26 V.S.A. § 1398. This overall statutory scheme confirms the different purposes for § 1354 (regulating the professional work of licensed physicians) and § 1398 (determining the personal and moral standards of those persons who may hold a license), and we cannot accept licensee's argument that the two provisions are coextensive.

Licensee contends, however, that the legislative amendments to 26 V.S.A. § 1354 made in 1990 and 1992 are proof of legislative intent that the disciplinary authority of the Board is restricted to those categories of "unprofessional conduct" enumerated in § 1354. The 1990 amendment changed 26 V.S.A. § 1354(7) from "immoral conduct of a physician in his practice as a physician" to "conduct which evidences unfitness to practice medicine." The 1992 amendment changed 26 V.S.A. § 1354(3) from "conviction of a crime arising out of the practice of medicine" to "conviction of a crime arising out of the practice of medicine or conviction of a felony, whether or not related to the practice of medicine." These amendments were in response to licensee's contention before the Board that he could not be sanctioned because his conduct was not proscribed by § 1354.

We agree with licensee's argument that the amendments show a legislative intent to change the effect of existing law, but disagree with the argument that the amendments prove that authority to suspend or discipline did not exist under § 1398. The 1992 amendment to chapter 23 of Title 26 was approved on May 15, 1992. The specification of charges made by the Board on November 5, 1991, asserted jurisdiction under § 1398 and accused the licensee of engaging in immoral and/or dishonorable conduct. The legislature did not eliminate the Board's jurisdiction to suspend or revoke under § 1398 in May of 1992, and this inaction may be interpreted as its intention to leave jurisdiction under § 1398 intact. See *Trapeni v. Department of Employment Security*, 142 Vt. 317, 322–23, 455 A.2d 329, 331–32 (1982) (where legislature had opportunity to amend statute but did not, legislature's inaction was expression of intent to leave statute intact).

Finally, licensee argues that the Board's sanctioning power is, by its own rule, limited to conduct set forth in 26 V.S.A. § 1354. BMP Rule 2.2. Although Rule 2.2 lists conduct

that is sanctionable, this list is not exclusive. Even assuming that Rule 2.2 provides an exclusive list of sanctionable conduct, it will not automatically be upheld. Although an administrative body's interpretation of the statutory provisions it must execute will be sustained on appeal absent a compelling indication of error, to the extent that a rule conflicts with the statute, the rule cannot be sustained. *In re Peel Gallery of Fine Arts*, 149 Vt. 348, 350, 543 A.2d 695, 697 (1988). In the present case, if we interpret Rule 2.2 as limiting the Board's jurisdiction to conduct listed in § 1354, the rule would present an impermissible restriction on the Board's powers under 26 V.S.A. § 1398. See *In re Strandell*, 562 A.2d 173, 178 (N.H. 1989) ("Administrative rules may not add to, detract from, or modify the statute which they are intended to implement."); cf. *In re Vermont Gas Systems, Inc.*, 150 Vt. 34, 39, 549 A.2d 627, 630 (1988) ("administrative agency's rule-making authority cannot support an expansive interpretation of its own powers").

Moreover, in the present case, there are two agency interpretations of the statute, Rule 2.2 and the Board's order of February 28, 1992, stating that the Board had jurisdiction over licensee's conduct under § 1398. Where possible, we favor an interpretation that harmonizes conflicting provisions. See *State Agency of Natural Resources v. Riendeau*, 157 Vt. 615, 620, 603 A.2d 360, 362 (1991) (harmonizing apparently conflicting statutory provisions). By interpreting Rule 2.2 as nonexclusive, the rule is consistent with the Board's decision.

*Reversed and remanded.*

**Dooley, J.,** dissenting. The decision of the Board of Medical Practice to go forward with a proceeding to revoke plaintiff's license is a clear case of using the end to justify the means. The trial court recognized that and properly held that the law provided no grounds to revoke plaintiff's license to practice medicine. I am disappointed that the majority fails to follow the trial court's well-reasoned decision.

In order to accept the majority opinion, we must find that the legislature intended to create two separate and competing disciplinary schemes for doctors, giving the Board the unfettered discretion to employ whichever system it wants in any given

case. The majority gives no reason why the legislature would create duplicative systems, and the Board has suggested none. Instead, it concludes that the systems are not really duplicative because neither the prohibition nor the permissible sanctions are identical. These are distinctions without relevant differences. Both statutes provide for disciplinary actions; there is a large overlap in the grounds for discipline; and all sanctions available under 26 V.S.A. § 1398 are available under § 1354. There is no rational purpose for two systems with this degree of duplication.

Our overall mission in construing a statute is to give effect to the intent of the legislature, see *Lincoln Street, Inc. v. Town of Springfield*, 159 Vt. 181, 184, 615 A.2d 1028, 1030 (1992), and we do not assume the legislature intended to act irrationally. See *O'Brien v. Island Corp.*, 157 Vt. 135, 139, 596 A.2d 1295, 1297 (1991) (court must avoid absurd or unreasonable consequences when construing a statute). The only way we can reach the majority's result is to ignore the intent of the legislature.

We have considered numerous cases in which two parts of a statutory scheme treated the same subject in different or inconsistent ways. Two methods of analysis emerge from these precedents. Where we have considered the different treatments of the subject to be inconsistent, we have developed rules to resolve the inconsistency. "Specific statutes control over a general statute, and if two statutes deal with the same subject matter, the more recent legislative enactment will control." *Lomberg v. Crowley*, 138 Vt. 420, 423, 415 A.2d 1324, 1326 (1980). In *Lomberg*, one statute gave a general waiver of the state's sovereign immunity to the extent that its liability was covered by insurance; another limited that waiver, excluding instances of defamation. This Court held that the latter provision controlled over the former; thus, sovereign immunity was a complete defense to the state's liability for defamation, even though the state was insured against such liability. *Id.* The latter provision was more specific and later in time.

If we view §§ 1354 and 1398 as inconsistent, our rules for resolving the inconsistency clearly favor the application of § 1354. It is more specific than § 1398 and is later in time. The legislature intended that the specific grounds for license revocation be supplied by § 1354.

More often than the *Lomberg* approach, we have harmonized the varying provisions without declaring a direct inconsistency. This approach is based on "a fundamental rule of statutory construction that statutes dealing with the same subject matter should be construed with reference to each other as parts of one system." *Emmons v. Emmons*, 141 Vt. 508, 512, 450 A.2d 1113, 1115 (1982). We must consider the whole, and every part, of the statutory scheme, not just isolated sentences and phrases. Even if there is no direct conflict, where one of two statutes covering the same subject is more specific than the other, we give effect to the more specific provision according to its terms. See *State v. Buelow*, 155 Vt. 537, 541, 587 A.2d 948, 951 (1990); *State v. Jarvis*, 146 Vt. 636, 638, 509 A.2d 1005, 1006 (1986).

*Jarvis* involved a construction question similar to the one we face here. Two statutes, in separate titles, provided authorization for a sentencing court to order restitution to a victim. One statute was broad and contained no limits on the type of damage for which the court could order restitution. The other was specific and did contain limits. This Court, holding that the limitations in the second statute controlled, reversed a restitution order awarding damages for pain and suffering. *Id.* Following *Jarvis*, we should hold that the specific disciplinary grounds of § 1354 control.

If the majority's failure to harmonize §§ 1354 and 1398 were the only deficiency in its construction, I might accept the result. Here, a number of other reasons command a different result. First, although § 1398 is in a different subchapter from § 1354, its subchapter contains no procedural mechanism for effecting the powers granted by § 1398. Since it must borrow procedures from the earlier subchapter, detailed in §§ 1353–1363, the clear implication is that § 1398 is part of, and therefore to be read in conjunction with, the statutory framework governing the conduct of physicians. This framework defines, in § 1354, the conduct for which the Board may take disciplinary action, including the suspension or revocation of licenses.

Second, § 1398 does not define the terms "immoral" and "dishonorable" conduct. Apart from the constitutional infirmities that an independent reading of this section would entail—unless defined, the terms are excessively vague and potentially overbroad—a review of the history of these statutory provi-

sions suggests that § 1354 was intended to exclusively define the various types of sanctionable conduct. Section 1398 was adopted in substantially its present form in 1906, and a few years later a companion provision was added, which defined "unprofessional" and "dishonorable" conduct. See 1906, No. 164, § 1; 1915, No. 188, § 3. This latter provision, § 1399, was repealed and replaced by § 1354 when the current statutory framework creating the Board of Medical Practice was adopted in 1976. Thus, the clear implication of the statutory history is that § 1354 defines the conduct for which the Board may act under either § 1361 or § 1398 to revoke or suspend a physician's license.

Third, the majority states that licensee's argument would turn the terms "immoral" and "dishonorable" in § 1398 into "mere surplusage." Rather, the majority's approach would turn the whole of § 1354 into surplusage. Under the majority's analysis, the Board, when not finding the conduct for which it wishes to sanction a physician listed in § 1354, has the option of entirely discarding that section and basing a sanction upon the broad and now undefined language of § 1398. Section 1354 becomes a virtual nullity, a construction that avoids the legislative intent.

The majority's use of construction rules about plain meaning and surplusage demonstrates vividly why our precedents require us to harmonize separate statutes dealing with the same subject. Viewed independently, the meaning of each statute is "plain"; it is the presence of the other statute that creates the ambiguity. Often, a melding of the statutes into an overall meaning will make some part of one or more of them surplusage. None of our precedents support a construction where the specific, detailed and more recent statute becomes surplusage in relation to a broad, vague, seldom-used and older statute.

Fourth, the § 1398 grounds do not become surplusage under the proper construction of the statute because they still govern license applications, just as § 1354 describes only conduct for which discipline may be imposed. Obviously, the construction created an inconsistency between the grounds upon which the Board could deny a license and those for which a license could be suspended or revoked. The legislature's actions in respond-

ing to this inconsistency is itself a recognition that the legislature never intended the construction that the majority has adopted. The gap was eliminated by an amendment to § 1354(7), which previously addressed "immoral" conduct but provided sanctions only for actions related to the practice of medicine. The amendment expanded the scope of § 1354, and part (7) now covers "conduct which evidences unfitness to practice medicine." This amendment would have been unnecessary if the legislature were acting in accordance with the majority's view of the statutory scheme. The section was amended well prior to the trial court's decision in this case; I find no basis for the majority's statement that the amendment could have been enacted in response to judicial interpretation of the legislature's original intent.

Fifth, it is very difficult to accept the majority's statement that the amendment was intended to expand the range of possible sanctions for conduct punishable under § 1398. If the legislature wanted to effect a change in § 1398, it is logical that it should amend that section, not a different one. Viewing this question in the reverse, the amendment of § 1354 indicates that it is *conduct*, not the type of available sanction, that the legislature wanted to address. If § 1398 authorizes sanctions for conduct other than that contained in the pre-amendment version of § 1354, there would have been no need to expand the list of sanctionable conduct in § 1354.

Sixth, it makes no sense that the "immoral" or "dishonorable" conduct that the majority holds punishable under § 1398 can be met only with the extreme sanctions of license suspension or revocation, or no sanction at all. Obviously, these terms may apply to actions that are not so serious as to require harsh sanctions, but which merit some form of official response. Again, this paradox has been resolved by expanding the reach of § 1354, not § 1398. The clear implication is that § 1354 is the controlling provision, not § 1398.

I have left the most important for last. I began by characterizing this case as one in which the ends are intended to justify the means; in other words, plaintiff's conduct was so outrageous that a way must exist to discipline him. The accuracy of this assessment of the Board's motivation is evident from the plain language of the Rules of the Board of Medical

Practice. Rule 2.2 states that "[u]nder 26 VSA §§ 1361 and 1398, the Board may refuse to issue a physician's license or suspend, revoke or otherwise take action against a license for any of the following reasons, set forth in 26 VSA § 1354," and goes on to list the § 1354 criteria. The rule plainly acknowledges that both § 1361 *and* § 1398 are governed by the criteria in § 1354. The majority's statement that the specification of permissible grounds for discipline listed in the rule, which reproduces § 1354 precisely and makes no mention of other grounds, is "not exclusive" is clearly wrong. "An administrative agency must abide by its regulations as written until it rescinds or amends them." *In re Peel Gallery of Fine Arts*, 149 Vt. 348, 351, 543 A.2d 695, 697 (1988). The rule adopts a construction of the statute to which we must defer absent compelling indication of error. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992).

Beyond its assertion that the statute means what the rule says it does not, the majority has an interesting answer to the obstacle created by the rule. To the majority, both the rule and the Board's decision ignoring the rule are entitled to equal weight in determining the interpretation of the statute by the agency that administers it. We are then left with no consistent agency interpretation to which we give deference, or a false harmonization of the rule and its opposite. Thus, the agency is completely free to ignore its own rules and defeat their legal effect in the courts. This is an amazing view of the power of administrative agencies.

As noted above, the legislature amended the statute so that the conduct committed by this licensee will be grounds for disciplinary action with respect to others. The result of the majority opinion is to give retroactive effect to the statutory amendment and thereby accomplish indirectly something that may not be done directly. See 1 V.S.A. § 214; *State v. Willis*, 145 Vt. 459, 466–67, 494 A.2d 108, 112 (1985). In reaching this result, the opinion fails to acknowledge our relevant precedents and is inconsistent with them. Without justification, it allows the Board to wholly evade its own rule covering this issue. The end may be seen as just, but the means clearly are not. I dissent.

I am authorized to state that Justice Morse joins in this dissent.