SKOGLUND, J., dissenting.
¶ 21. A cotenant engaged in drug activity in tenant's mobile home; this illegal activity substantially violated the lease for the lot where tenant's mobile home is located. Subsequently, and without providing tenant with written notice of the intent to initiate eviction proceedings, landlord commenced eviction proceedings by filing a complaint against tenant in superior court. Landlord's action was supported by 10 V.S.A. § 6237(a), which demonstrates a plain legislative intent to dispense with notice when a leaseholder commits a substantial violation of the lease terms. I dissent.
¶ 22. The relevant part of 10 V.S.A. § 6237(a) provides:
A leaseholder may be evicted only for nonpayment of rent or for a substantial violation of the lease terms of the mobile home park ... and only in accordance with the following procedure:
....
(2) Prior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder by certified or registered mail, except as provided in subdivision (3) of this subsection:
(A) of the grounds for an eviction proceeding;
....
(3) A substantial violation of the lease terms, of the mobile home park, or an additional nonpayment of rent occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection may result in immediate eviction proceedings.
(4) A substantial violation of the lease terms, other than an uncured nonpayment of rent, will be insufficient to support a judgment of eviction unless the proceeding *1224 is commenced within 60 days of the last alleged violation. A substantial violation of the lease terms based upon criminal activity will be insufficient to support a judgment of eviction unless the proceeding is commenced no later than 60 days after arraignment.
¶ 23. I fail to see the ambiguity. 10 V.S.A. § 6237(a)(2) sets forth the general rule that any eviction proceeding requires notice and, in the same sentence, indicates that exceptions to the general rule exist in § 6237(a)(3) (stating that "except as provided in subdivision (3) of this subsection" (emphasis added)). Subsection (a)(3) then provides two events that can support immediate eviction proceedings: a "substantial violation of the lease terms" or a "an additional nonpayment of rent occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection." Thus, a park owner may begin eviction proceedings against a leaseholder without notice if the lease is substantially violated or if, within six months of receiving the eviction-proceeding notice under subdivision (2), the leaseholder failed to pay rent for a second time. Because the statute's meaning is plain on its face, I would give effect to this meaning. See Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) ("The [plain meaning] rule provides that when the meaning of a statute is plain on its face it must be enforced according to its terms and there is no need for construction ....").
¶ 24. More important, this plain reading comports with the overall structure of § 6237 and evinces the Legislature's clear intent to treat eviction proceedings involving "substantial violations of the lease" differently from other eviction proceedings. Hill, 143 Vt. at 93, 463 A.2d at 233 ("Underlying all other rules of construction is the fundamental rule that we must ascertain and give effect to the true intent of the legislature ...."). In particular, § 6237's procedural mechanics for eviction proceedings create a progressive scheme tied to the leaseholder's culpability for lease violations. For those instances that the leaseholder bears no fault-"a change in use of the park land or parts thereof or a termination of the mobile home park"-he or she must have notice prior to an eviction proceeding. Id. § 6237(a), (a)(2) (providing no exception for these proceedings). Similarly, notice is still required the first time that a leaseholder does not pay rent. Id. § 6237(a)(3). But if the leaseholder does not pay rent within six months of an initial nonpayment of rent that triggers an eviction proceeding, this second failure by the leaseholder to pay rent can result in immediate eviction and does not require notice to initiate the proceeding. Id. Finally, a leaseholder who substantially violates the lease is not entitled to notice. This graduated scheme balances a leaseholder's interest with the park owner's interest by decreasing the leaseholder's procedural protections relative to the harm the leaseholder causes the park owner and any other leaseholders in the mobile home park. Similarly, this scheme provides the leaseholder with an opportunity to cure a violation if the violation does not rise to a substantial level.
¶ 25. Moreover, even though the upshot of this procedural system is that a leaseholder who commits a substantial lease violation has fewer procedural protections, the Legislature still provided some protections for leaseholders who commit substantial lease violations. Under § 6237(a)(4), eviction proceedings for substantial violations of the lease terms must start within "60 days of the last alleged violation" or "no later than 60 days after arraignment." These time limits are specific to violations of lease terms. Likewise, if a court enters an order of eviction, the court always retains the discretion to determine how and when an evicted leaseholder must comply with the eviction order. Id. § 6237(e) (stating that "order of eviction pursuant to this section shall provide that a leaseholder shall sell a mobile home or remove a mobile *1225 home from the mobile home park: (1) within three months from the date of execution of a writ of possession ... ; or (2) within another period ordered by the Court in its discretion.").
¶ 26. Overall, the plain language indicates that the Legislature set up a balanced notice scheme based on the character of the leaseholder's violation. This is consistent with the purpose of § 6237 as articulated by this Court: "[ Section] 6237 provides owners and renters of mobile homes, who tend to be lower-income groups that may have difficulty finding alternative housing, added security from arbitrary eviction." State Agency of Dev. & Cmty. Affairs v. Bisson, 161 Vt. 8, 14, 632 A.2d 34, 38 (1993). The scheme described above is anything but arbitrary; it is a clear plan that provides equal weight to all of the competing interests, and the limited procedural protections for substantial violators of a lease reflect this balancing.
¶ 27. Despite this plain language, tenant and the majority point to two possible sources of ambiguity and conclude that, because of these claimed ambiguities, the Department of Housing and Community Development's interpretation of the statute should be given deference. As tenant states, to be ambiguous, the statute must be capable of more than one interpretation. See Ambiguity, Black's Law Dictionary (10th ed. 2014) ("An uncertainty of meaning based not on the scope of a word or phrase but on a semantic dichotomy that gives rise to any of two or more quite different but almost equally plausible interpretations."). But § 6237's language does not support more than one plausible interpretation.
¶ 28. The first claimed ambiguity is that "subsection (3) is unclear about whether the phrase 'occurring within six months' refers only to 'an additional nonpayment of rent' or if it also applies to '[a] substantial violation of the lease terms.' " Ante, ¶ 12. But this phrase is ambiguous only if a reader ignores a basic tenet of the English language: "[I]f a participial phrase does not start a sentence, it should modify the noun, pronoun, or noun phrase that most closely precedes it." See B. Garner, The Redbook: A Manual on Legal Style § 10.29(b) (2d ed. 2006). Here, the phrase "occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection" is a present participial phrase that modifies the noun that closely precedes it-in this case, "nonpayment." No rule of language suggests that the participial phrase modifies "[a] substantial violation of the lease terms."
¶ 29. The absurdity of this reading becomes clear after examining the two trial court cases relied on by the majority: Sunset Lake Villa Associates v. Miller, No. 416-4-15 Cncv, slip op. (Vt. Super. Ct. July 6, 2015), and Garden Homes Management Corp. v. Marchand, No. 251-7-12 Bncv, slip op. (Vt. Super. Ct. Sept. 18, 2012). In Garden Homes Management Corp., the trial court confronted a similar issue involving a landlord's failure to notify a leaseholder of eviction proceedings for a substantial violation of the lease terms. Garden Homes Managment Corp., No. 251-7-12 Bncv, slip op. at 2. The trial court first looked to the Department's rule interpreting § 6237, which states that notice will not be required if "a substantial violation is the second such occurrence within 6 months." Housing Division Rules Part I: Mobile Home Parks, Code of Vt. Rules 11 020 001, Rule 12.2.1, http://www.lexisnexis.com/hottopics/codeofvtrules/ [https://perma.cc/4YZV-QN32]. Based on the Department's interpretation, the trial court concluded an ambiguity existed and applied the Department's rule.[2]
*1226 Garden Homes Mgmt. Corp., No. 416-4-15, slip op. at 5. Subsequently, the trial court in Sunset Lake Villa Associates relied on Garden Homes Management Corp. and further noted that § 6237"is poorly worded and confusing, primarily because it appears to be missing a comma between the words 'rent' and 'occurring.' " Sunset Lake Villa Assocs. v. Miller, No. 416-4-15, slip op. at 2. As a result, according to the trial courts, the Department, and the majority, a properly punctuated version of § 6237 would include a comma between "rent" and "occurring." See ante, ¶ 13.
¶ 30. This phantom comma creates an ambiguity where none was present.[3] As explained above, the phrase "occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection" is a present participial phrase that modifies the noun "nonpayment." See 10 V.S.A. § 6237(a)(3). To ensure a reader's understanding, a present participial phrase should be placed close to the noun or pronoun it modifies. See Garner, supra, § 10.29(b). A comma before the present participial phrase creates a dangling participial phrase; that is, the phrase is "dangling" because it is unclear what the phrase modifies. Id. § 10.29(c); see also Univ. of Chicago, Chicago Manual of Style § 5.112 (16th ed. 2010) ("A participle that has no syntactical relationship with the nearest subject is called a dangling participle or a dangler. Often, the sentence is illogical ...."). Here, placing a comma between "rent" and "occurring" would create a dangler and result in an ambiguity because it would be unclear whether the phrase modified "substantial violation of the lease terms" or "an additional nonpayment of rent." In other words, the phantom comma produces the very ambiguity that the majority claims already exists. Rather than manufacture an ambiguity out of thin air, I would follow the clear intent of the language: the present participial phrase "occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection" modifies "nonpayment," the closest noun preceding the phrase. Garner, supra, § 10.29(b).
¶ 31. The second claimed ambiguity involves the interplay between § 6237(a)(2) and § 6237(a)(3). The argument is that, because § 6237(a)(2) states that "[p]rior to the commencement of any eviction proceeding" a park owner must provide notice to a leaseholder, notice is required regardless of the violation type. This argument ignores several key components of the statute's plain language. Most important, it reads out the third phrase in § 6237(a)(2), which provides exceptions to the general notice requirement. Id. ("Prior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder by *1227 certified or registered mail, except as provided in subdivision (3) of this subsection...." (emphasis added)). Similarly, this argument disregards the word "additional" in § 6237(a)(3). In that section, the Legislature modified "nonpayment of rent" with the word "additional," id., but omitted the word "additional" when it described a "substantial violation of the lease terms." Id. (listing "an additional nonpayment of rent" (emphasis added)). If all violations required notice, the Legislature would not have used the word "additional" to distinguish between "nonpayment of rent" and "substantial violation of the lease terms." Finally, as described above, the phrase "occurring within six months of the giving of the notice referred to in subdivision (2)" modifies "nonpayment of rent." Combined with the word "additional," the phrase creates distinct procedural protections for leaseholders who fail to pay rent. By ignoring these phrases and their function in the statute, tenant and the majority argue that § 6237 is ambiguous; however, the better course is to give effect to all parts of the statute.
¶ 32. In short, § 6237's language is not ambiguous. I would stand on the statute's plain language, which creates a graduated procedural scheme depending on the type of violation. In this case, tenant committed a substantial violation of the lease terms; as a result, landlord was not required under 10 V.S.A. § 6237(a)(3) to provide notice before initiating eviction proceedings.

The trial court's circular reasoning in Garden Homes Management Corp. ignores our precedent. A court should look to the agency interpretation to determine the meaning of a statute only if the court first determines that the statute is ambiguous. See In re Peel Gallery of Fine Arts, 149 Vt. 348, 351, 543 A.2d 695, 697 (1988) ("[W]e only need to look to the administrative construction of the regulation if the meaning of the words used is in doubt." (quotation omitted)). An agency's incorrect interpretation of a statute does not establish that the statute is ambiguous. Delozier v. State, 160 Vt. 426, 434, 631 A.2d 228, 232 (1993) (stating that "to the extent that a rule conflicts with the statute, the rule cannot be sustained").

Moreover, the presence or absence of punctuation should not influence the court's construction where, as in this case, the intent of the Legislature may be determined from consideration of the statute as a whole. Hill, 143 Vt. at 94, 463 A.2d at 234 ("[I]t is the general rule that punctuation, per se, forms no part of a statute and will not govern its construction as against the manifest intent of the [L]egislature ascertained from a consideration of the statute as a whole.").