## In re Club 107

[566 A.2d 966]

No. 85-526

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed August 11, 1989

*Frank F. Berk* and *Linda Sable,* Law Student (On the Brief) of *Mayer & Berk,* South Royalton, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *Robert W. Gagnon,* Senior Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Dooley, J.** Appellant, Club 107, is the holder of first and third class licenses to sell alcoholic beverages for consumption on its premises. On November 1, 1985, the Liquor Control Board (Board) determined that appellant had, on August 28, 1985, violated the Board's General Regulation 9(a) which prohibits "[o]bscene, lewd, or indecent entertainment." As a result of this violation, the Board suspended appellant's licenses for a period of fifteen days. This appeal ensued, and the Board issued an order staying the suspension during the pendency of the action before this Court. We hold that in promulgating General Regulation 9(a) the Board exceeded its legislative grant of authority and that the regulation is, therefore, invalid. For this reason, we reverse and vacate the Board's order.

On August 28, 1985 appellant held a "ladies night," so called, which included male dancers as the featured entertainment. In attendance at this event were approximately 170 women

and two investigators from the Department of Liquor Control. During the course of the evening, the investigators observed that one of the dancers had exhibited pubic hair during his performance and that the buttocks of the same dancer and a subsequent dancer were partially exposed as they danced. Appellant was cited for violating the regulation, and a hearing was held before the Board on October 18, 1985. On November 1 the Board issued its findings of fact, conclusions of law, and ruling.

Appellant challenges the constitutionality of General Regulation 9(a) on the grounds that it violates the free speech provision embodied in Chapter I, Article 13 of the Vermont Constitution, which states:

> That the people have a right to freedom of speech, and of writing and publishing their sentiments, concerning the transactions of government, and therefore the freedom of the press ought not to be restrained.

Specifically, appellant argues that the semi-clothed dancing of the male performers was speech-related conduct which is improperly infringed upon by the regulation.

We need only address the constitutional issue if we find that this regulation was promulgated pursuant to authority either expressly or impliedly granted to the Board by the Legislature. See, e.g., *4245 Corp. v. Division of Beverage*, 371 So. 2d 1032, 1033 (Fla. Dist. Ct. App. 1978). This is because without a legislative grant of authority enabling the Board to establish and enforce such a prohibition, the regulation is void. See *In re Agency of Administration*, 141 Vt. 68, 75, 444 A.2d 1349, 1352 (1982). As this Court has previously observed, "[a]n agency must operate for the purposes and within the bounds authorized by its enabling legislation, or this Court will intervene." *Id.* If the regulation is void as exceeding the Board's enabling legislation, it cannot stand—regardless of whether its enforcement violates the constitutional protections afforded to free speech under either the Vermont or United States Constitutions. Thus, we must first put aside the question whether the semi-nude performances of male dancers in a night club is constitutionally protected speech-related conduct, and the question of whether the state—in the exercise of its police powers—may regulate such activities. Rather, the focus

of our initial concern is whether the Legislature has authorized the Liquor Control Board to promulgate such regulations.

The challenged regulation states, in relevant part:

> 9. (a). Obscene, lewd, or indecent entertainment. The Liquor Control Board shall consider the following conduct upon any licensed premises to constitute obscene, lewd or indecent entertainment:
>
> (1) The real or simulated showing of the human male or female genitals, pubic hair or buttocks, or the showing of the female breast below the top of the areola by any employee, entertainer or by any other person.

In order to determine whether the promulgation of Regulation 9(a) was a valid exercise of the Board's authority, we begin our analysis by noting that the Board, as an administrative body, "has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted ...." *Trybulski v. Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 7, 20 A.2d 117, 120 (1941). And while there is a presumption of validity afforded the actions taken by administrative agencies, see *In re Handy*, 144 Vt. 610, 612, 481 A.2d 1051, 1052 (1984), an agency's regulations must be reasonably related to its enabling legislation in order to withstand judicial scrutiny. See *In re Baptist Fellowship of Randolph, Inc.*, 144 Vt. 636, 638, 481 A.2d 1274, 1275 (1984); see also *In re Vermont Gas Systems, Inc.*, 150 Vt. 34, 39, 549 A.2d 627, 630 (1988) (agency's rulemaking authority cannot support an expansive interpretation of its own powers); *Agency of Administration*, 141 Vt. at 75, 444 A.2d at 1352 (administrative agency may not use its rulemaking power to exceed its legislative grant of authority); *State v. Auclair*, 110 Vt. 147, 163, 4 A.2d 107, 114 (1939) (even when afforded broad discretion, an administrative agency may not act in an "unrestrained" or "arbitrary" manner).

The Liquor Control Board has been given broad authority to "[m]ake rules and regulations concerning, and issue permits under such terms and conditions as it may impose for the furnishing, purchasing, selling, ... delivering and possessing of alcohol ...." 7 V.S.A. § 104(8). And it may "[m]ake and

promulgate regulations necessary for the execution of its powers and duties ...." 7 V.S.A. § 104(5). Moreover, the Legislature has provided that:

> [Title 7] is based on the taxing power and the police power of the state, and is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state, and all its provisions shall be liberally construed for the accomplishment of the purposes set forth herein.

7 V.S.A. § 1; see also *Ackerman v. Kogut,* 117 Vt. 40, 47, 84 A.2d 131, 136 (1951) (interpreting the predecessor statute to 7 V.S.A. § 1).

Even given the sweeping language of § 1, the Board's authority is not unrestrained. See *Auclair,* 110 Vt. at 163, 4 A.2d at 114. In *Ackerman,* 117 Vt. at 47, 84 A.2d at 136, this Court discussed the meaning of the language in the predecessor statute to 7 V.S.A. § 1. There, the Court determined that "the spirit and purpose of the law is that traffic in intoxicating liquor shall be so conducted as to discourage intoxication and encourage temperance." The implication of our discussion in *Ackerman* for the purposes of the present case is that the mere coincidence of the sale of liquor and some other activity is not—by itself—sufficient to allow the Board to regulate the other activity for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state. There must, in addition, be some nexus between the regulation and a specifically granted power of the Board or between the regulation and the consequences of excessive use of alcohol. We can find no sufficient connection here—the Board is attempting generally to regulate public morals under the guise of a liquor regulation.

■ The Board argues that a nexus is in fact present—namely, that the combination of obscene, lewd, or indecent entertainment with the consumption of alcohol brings such conduct within the ambit of the Board's rulemaking authority. This nexus is necessarily based on the proposition that the Board's expertise in the regulation of intoxicating liquor puts it in a uniquely qualified position to define exactly what conduct is "obscene" so that the combination of such conduct with the consumption of alcohol poses a particular or enhanced

threat to the peace, safety, and morals of the people of the state. The Board is necessarily urging that it can discern any and all activities that—when coupled with alcohol consumption—threaten the good order of the state.[1] We can find no support for these propositions either in the express terms of the Board's enabling legislation or in the necessary implication of the express language. Thus, while due deference is afforded to administrative actions which are within an agency's area of expertise, see *In re Johnston*, 145 Vt. 318, 321–22, 488 A.2d 750, 752 (1985), such deference is not warranted when an agency's actions depend on expertise not supported by its purpose, duties, or experience.

█ Moreover, while the Legislature has itself regulated certain activities which are viewed as especially harmful when undertaken in conjunction with alcohol consumption, see, e.g., 23 V.S.A. § 1201 (prohibition against operation of a motor vehicle while under the influence of intoxicating liquor), it has not spoken about live entertainment in establishments serving alcohol beverages. Further, Vermont—while statutorily prohibiting obscene, lewd, or indecent acts performed against minors, see 13 V.S.A. §§ 2801–2813—is one of the minority of states without a general obscenity statute for material viewed or read by adults. Thus, given the Legislature's specific enactments concerning the regulation of both alcohol and obscenity, and in consideration of its failure to provide for a general obscenity law, we must conclude that it has statutorily occupied the field of obscenity as fully as it chooses, to the exclusion, therefore, of further regulation by administrative agencies, including the Liquor Control Board. Cf. *In re*

---

[1] Under appellee's rationale, the Board's jurisdiction may presumably extend to the regulation of any activity which, although benign standing alone, could potentially contribute to the volatility of a situation when pursued in conjunction with the sale and consumption of intoxicating liquor. The variety of such activities is, practically speaking, boundless, and a list of examples is limited only by one's imagination. For instance, such activities might include: displaying a portrait of the President of the United States during an election year; tuning into a hockey game on television; playing darts or shuffle board; hosting a sports banquet; or for that matter, hosting the winning and losing sides of a softball game.

*Goodyear Tire & Rubber Co.*, 133 Vt. 132, 138, 335 A.2d 310, 314 (1975).[2]

■■ Thus, while the provisions of Title 7 are to be liberally construed toward the accomplishment of the Board's purposes in regulating the sale of intoxicants and encouraging temperance, *Ackerman*, 117 Vt. at 47, 84 A.2d at 136; *State ex rel. Billado v. Control Commissioners of South Burlington*, 114 Vt. 350, 354–55, 45 A.2d 430, 432 (1946), the Board may not, through the promulgation of regulations, expand its authority into areas of activity that are beyond the focus of Title 7. Cf. *In re Vermont Gas Systems, Inc.*, 150 Vt. at 39, 549 A.2d at 630. As there is neither an express nor an implied grant of authority permitting the Board to define and regulate individual conduct that is obscene, lewd, or indecent, we hold that the Board has exceeded its statutory grant. For this reason General Regulation 9(a) is invalid and thus void.

*The order of the Liquor Control Board is reversed and vacated.*

---

[2] Restrictions on the scope of the Board's rulemaking authority have been emphasized by the Legislature in other areas. In response to a proposed regulation that would have prohibited persons below the age of 18 from selling alcoholic beverages in "second class establishments," the General Assembly—by joint resolution—directed that such a regulation would be improper. J.R.S. 97 (1985 Adj. Sess.). Also, the Attorney General has issued an opinion suggesting that the powers of the Board are limited. Op. Att'y. Gen. 165 (1964–66) (Board may not—without specific legislative approval—establish or alter fees for licenses or permits).