## In re 1650 Cases of Seized Liquor

[721 A.2d 100]

No. 97-349

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Corsones, D.J., Specially Assigned**

Opinion Filed September 11, 1998

*William H. Sorrell*, Attorney General, and *William Griffin*, Chief Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Russell D. Barr, Daniel A. Seff* and *William L. Durrell, Law Offices of Russell D. Barr*, Stowe, for Defendant-Appellant.

**Dooley, J.** The Saint Regis Mohawk Tribe appeals from a decision of the Washington District Court forfeiting 1650 cases of liquor the Tribe was transporting through the State of Vermont without a liquor control permit. See 7 V.S.A. § 63(a). The Tribe presents several arguments as to why the Tribe's liquor could not be seized and

forfeited under Vermont's liquor control enforcement statutes. See *id.* §§ 561-601. We affirm.

The Tribe employed a California liquor broker (Manormead) to purchase 1650 cases of liquor from Jenkins Spirits Corp., a Londonderry, New Hampshire, distiller. The liquor was purchased free on board, and thus title passed to the Tribe when the common carrier (Advantage Transportation Inc.) picked up the liquor from Jenkins Spirits.

On April 12, 1996, during transport of the liquor to the Tribe's reservation in Massena, New York, the truck was stopped by the Vermont State Police on Interstate 89 near Middlesex, Vermont. The truck did not have a permit to transport alcohol as required by 7 V.S.A. § 63(a), and the bill of lading indicated that the liquor was being shipped to Manormead in Santa Barbara, California, and not to the Tribe's reservation in Massena, New York. The Department of Liquor Control (DLC) determined that the "spirituous liquor" was being transported unlawfully and seized the liquor pursuant to 7 V.S.A. § 561(a) - (b). On April 16, 1996, the State filed a forfeiture complaint arguing that the liquor should be forfeited pursuant to 7 V.S.A. § 568 because the Tribe lacked a permit pursuant to § 63(a). The Tribe opposed forfeiture, arguing primarily that the truck had a valid bill of lading and that an unwritten Liquor Control Board (LCB) policy allowed a bill of lading to substitute for a transport permit. The State then amended its complaint to allege that the truck's bill of lading could not substitute for a transport permit because it did not state the real destination of the liquor.

The case went forward to an evidentiary hearing on June 11, 1996, with the Tribe arguing that (1) the liquor shipment complied with the LCB's rule that a bill of lading may substitute for a § 63(a) permit; (2) the LCB's characterization of its bill-of-lading rule amounts to an unconstitutional ex-post-facto law; (3) transportation of liquor without a permit is not a "use contrary to law" within the meaning of 7 V.S.A. § 568 and, therefore, could not serve as the basis for a forfeiture; (4) innocent ownership is a defense to a liquor forfeiture proceeding arising out of an alleged permit violation; (5) § 568 is unconstitutionally vague; and (6) the forfeiture of the liquor is an unconstitutionally excessive fine against the Tribe.

On June 18, 1997, the court issued its decision and order, holding that the bill of lading in this case did not satisfy the LCB requirements as a substitute for a § 63(a) transport permit. The court determined that the bill of lading did not properly include the name

of the receiver/consignee and did not specify the place the freight was to be delivered. Thus, the court found that the liquor was being transported unlawfully and further found that liquor being transported unlawfully was subject to forfeiture by the State. This appeal followed.

First, the Tribe argues that the liquor was not illegally transported because the truck driver had a valid bill of lading. The statute central to this argument is 7 V.S.A. § 63(a), which provides:

> (a) All spirituous liquors imported or transported into this state shall be imported or transported by and through the liquor control board. A person, partnership, association or corporation importing or transporting or causing to be imported or transported into this state any spirituous liquors shall be imprisoned not more than one year, or fined not more than $1,000.00, or both. However, it shall be lawful for a person to import or transport spirituous liquor into this state by first obtaining a permit from the liquor control board and a person may import or transport not more than eight quarts of spirituous liquors into this state in his or her own private vehicle or in his or her actual possession at the time of such importation without permit.

Although the statute requires the transporter to obtain a permit from the LCB, the board has adopted a policy that allows a complying bill of lading to serve as a permit. According to the testimony of the director of enforcement of the DLC and minutes of a January 17, 1996 LCB meeting, a bill of lading is considered a substitute for a § 63(a) permit for transport through Vermont to a destination outside Vermont if the bill of lading contains (1) a description of the freight being shipped, (2) the name and address of the shipper (consignor), and (3) the name of the consignee and the place freight is to be delivered.

As indicated in the statement of facts, the truck in this case had a bill of lading describing the liquor that was seized. The bill of lading described the consignee as Manormead and the destination as its office in Santa Barbara, California, although the recipient was actually the Tribe and the delivery was to be made to its reservation in Massena, New York. Because the bill of lading failed to accurately describe the consignee or the place of delivery, the DLC determined that it did not comply with the LCB policy and that the Tribe had violated 7 V.S.A. § 63(a).

The Tribe argues that the bill of lading was accurate and that the liquor shipment was simply diverted from Manormead to the Tribe as is authorized by § 7-303 of the Uniform Commercial Code, 9A V.S.A. § 7-303, which provides:

§ 7-303. Diversion; reconsignment; change of instructions

(1) Unless the bill of lading otherwise provides, the carrier may deliver the goods to a person or destination other than that stated in the bill or may otherwise dispose of the goods on instructions from

(a) the holder of a negotiable bill; or

(b) the consignor on a non-negotiable bill notwithstanding contrary instructions from the consignee; or

(c) the consignee on a non-negotiable bill in the absence of contrary instructions from the consignor, if the goods have arrived at the billed destination of if the consignee is in possession of the bill; or

(d) the consignee on a non-negotiable bill if he is entitled as against the consignor to dispose of them.

Therefore, the Tribe asserts, a bill of lading need not disclose the true or actual place of delivery as long as the reason for the discrepancy is that the freight was diverted pursuant to 9A V.S.A. § 7-303(1). See *id.*, Official Comment 1 (diversion is very common commercial practice); see generally 3 J. White & R. Summers, Uniform Commercial Code § 29-3, at 347 (4th ed. 1995) ("The beauty of 7-303 is that it recognizes the facts of life . . . . Under 7-303 the carrier can determine who is authorized to instruct the carrier to divert or the like.").

The Tribe misses the point of the LCB enforcement policy. It does not state that any valid bill of lading will substitute for a transport permit. Instead, it states that a bill of lading that meets three requirements will substitute for a transport permit. The fact that the trucker was carrying a valid bill of lading is irrelevant to compliance with the LCB policy, unless the bill of lading met the specific requirements of the policy. Thus, § 7-103 of the U.C.C., 9A V.S.A. § 7-103, confirms that the provision of the article on documents of title is subject to any regulatory statute of the state, or any regulation issued pursuant to a regulatory statute.

The Tribe argues, however, that diversion of goods is not inconsistent with the enforcement policy because the bill of lading properly described the relationship between the shipper and the purchaser, in

this case Jenkins Spirits Corp. and Manormead, and that the LCB enforcement policy required no more. Relying on the wording of the enforcement policy, and the testimony of the DLC enforcement director, the trial court held that the bill of lading must state the actual place of delivery, and the one covering the liquor failed to do so.

In resolving this issue, we first emphasize that the Tribe is not arguing that it complied with the statute by obtaining a transport permit. Nor is it attacking the validity of the LCB enforcement policy which goes beyond the statute. Thus, we assume the policy is valid, and the only question we resolve is whether the Tribe fit within it.

■ The enforcement policy is essentially a regulation. We apply the same rules of statutory construction to a regulation as we do to a statute. See *Rogers v. Watson*, 156 Vt. 483, 490, 594 A.2d 409, 413 (1991). We defer to an agency's construction of its own regulation. See *In re Towle*, 164 Vt. 145, 152, 665 A.2d 55, 61 (1995). Here, the court's construction of the enforcement policy as requiring that the bill of lading state the actual place of delivery is consistent with the plain meaning of the words of the policy. See *Carter v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998) (in absence of definition in statute, words are given their plain meaning). Moreover, the DLC director of enforcement testified the enforcement policy has always required that the bill of lading indicate the actual destination of the liquor shipment. The court properly relied on this testimony.

■ We also agree with the trial court that the purpose of Vermont's liquor control statutory scheme would be undermined by the Tribe's interpretation of the enforcement policy. Section 63(a)'s permit requirement is intended to help prevent the illegal transportation, sale and distribution of alcohol in the State of Vermont. See 7 V.S.A. § 1 (purpose of liquor control statute is to protect public welfare, good order, health, peace, safety, and morals). A bill of lading that does not indicate where the liquor is being delivered, or to whom, may establish rights between the owner and the shipper, but it does not give the necessary information to determine compliance with liquor control laws. Thus, in *Carter v. Virginia*, 321 U.S. 131, 135 (1944), the United States Supreme Court upheld as reasonable a Virginia requirement that a bill of lading for liquor show the true consignee and destination to prevent unlawful diversion. The freedom the Tribe seeks, to divert the liquor to any destination and recipient chosen by the purchaser, would make impossible effective monitoring of liquor

transportation to ensure the liquor is not distributed or used unlawfully.

Next, the Tribe argues that the enforcement policy, as construed by the trial court, represents an unconstitutional ex-post-facto law. Assuming this constitutional defect can apply to an enforcement policy that liberalizes a regulatory statute, we do not believe it applies here. For a statute or regulation to be an unconstitutional ex-post-facto law, it must be (1) retrospective, and (2) it must disadvantage the offender affected by it. See *Miller v. Florida*, 482 U.S. 423, 430 (1987). Based on the evidence before it, the trial court found that its interpretation of the enforcement policy was consistent with application of the policy in the past, and, thus, was not retrospective. The Tribe offered no contrary evidence. The court's findings and conclusion are supported by the evidence and must be affirmed.

The Tribe next asserts that the relevant statute does not allow forfeiture of liquor where the sole ground asserted by the State is that the liquor is being transported through Vermont without a permit. As discussed above, 7 V.S.A. § 63(a) makes it unlawful to import spirituous liquor into Vermont without a permit. The trial court held that § 63(a) was violated in this case, and we have affirmed this holding above. The issue, then, is whether this violation can give rise to forfeiture of the imported liquor.

Chapter 19 of Title 7 is titled "Enforcement" and provides remedies to enforce the rest of the liquor control title. 7 V.S.A. § 561(b) gives a law enforcement officer the power to arrest a person who the officer finds is "unlawfully . . . transporting spirituous liquor," and requires the officer to "seize the liquors . . . in the possession of the person." The statutes then provide two alternative procedures for seizing and forfeiting spirituous liquor. For purposes of simplification, we can define one procedure as applicable in cases of unlawful sale or possession, see *id.* §§ 563-570, and the other in cases of smuggling or unlawful transportation, see *id.* §§ 571-575. In the former case, the spirituous liquor and "the owner and keeper and all persons having the custody of, or exercising any control over, the liquor or property seized" are brought before a magistrate, 7 V.S.A. § 566, who decides whether the property will be forfeited in accordance with the following provision:

> If, upon hearing, it appears that such liquor or other property was intended for sale, distribution, or use contrary to law it shall be adjudged forfeited and condemned. When liquor or other property is adjudged forfeited and con-

demned under this section, it shall be turned over to the commissioner of liquor control for the benefit of the state.

7 V.S.A. § 568.

The alternative procedure involves both the spirituous liquor and the motor vehicle or other instrument of transport. The law enforcement officer must seize both the spirituous liquor and the instrument of transport and arrest the person in charge of transport. See *id.* § 571. The matter is presented to a district judge and

> [t]hereupon the same proceedings shall be had as to such liquor or alcohol and such . . . motor vehicle . . . as would be had if . . . spirituous liquors had been seized, except that if such vehicle . . . shall be finally adjudged forfeited and condemned the same, upon the written order of the magistrate, shall be sold at public sheriff's sale for the benefit of the state.

*Id.* § 572.

Defendant argues that the statutory scheme does not authorize the forfeiture of spirituous liquor unless it "was intended for sale, distribution, or use contrary to law" as provided in § 568 and illegally transported liquor does not fit within that description. The State argues illegal transport of liquor is "use contrary to law." As an example, it relies on *Commonwealth v. Stofchek*, 180 A. 84, 85 (Pa. Super. Ct. 1935), which holds in a similar context that "[t]he word 'use,' as it appears in the title, should be construed in a comprehensive sense, embracing, not only the consumption, using up, acquiring, storing, but also the keeping or possessing of, liquor." We agree with the State, and the trial court, but for a different reason.

Our goal in statutory construction is to implement the intent of the Legislature. See *Shea v. Metcalf*, 167 Vt. 494, 498, 712 A.2d 887, 889 (1998). We consider the purpose of the statute and look to the broad subject matter of the law, it effects, consequences and reason and spirit of the law. See *Merkel v. Nationwide Ins. Co.*, 166 Vt. 311, 314, 693 A.2d 706, 707-08 (1997). We "review the history and the entire framework of the statute." *Secretary v. Upper Valley Reg'l Landfill Corp.*, 167 Vt. 228, 241, 705 A.2d 1001, 1009 (1997).

The enforcement statutes were enacted at the same time, see 1934, No. 1, §§ 41, 48 (Spec. Sess.), and embody two complementary forfeiture procedures. Both involve seized liquor. In this context, the limit in § 568 to "property . . . intended for sale, distribution, or use contrary to law" is understandable because it provides a remedy for

cases of unlawful sale or possession. Thus, we agree with defendant that "use contrary to law" was not intended to include unlawful transportation.

We conclude, however, that the scope of the forfeiture remedy for cases of smuggling or unlawful transportation is broad enough to allow forfeiture in this case. That remedy is provided in the second sentence of § 572, as quoted above. The sentence is somewhat confusing because, by its terms, it applies as "if malt or vinous beverages or spirituous liquors had been seized" and, yet, can be invoked only if such beverages or liquors have actually been seized. We take the quoted clause to be an adoption by reference to the procedure in § 568.[1] We believe this is the only way to understand the sentence in the context of the entire statutory scheme. As a result, the remedy of forfeiture is applicable to spirituous liquor which is "being smuggled, delivered or transported contrary to law." *Id.* § 571.

Three additional reasons support this construction of § 572. First, although § 572 is titled as a forfeiture statute, it nowhere explicitly provides for that remedy, except by its adoption by reference in § 568. Thus, the adoption by reference is necessary for § 572 to accomplish its purpose.

Second, the exception in the second sentence of § 572 makes sense only as an exception to the general rule stated in § 568. Thus, § 568 provides that forfeited property is turned over to the commissioner of liquor control for the benefit of the state, but § 572 excepts the transportation instruments from this rule and requires that these be sold by a sheriff.

Finally, this construction makes the grounds for forfeiture of liquor coextensive with the grounds for seizure of liquor. The statutory scheme suggests no reason why the Legislature would authorize seizure of liquor in certain circumstances, but not provide for its forfeiture.[2] For example, the statutes do not provide for the return of property which had been seized because it was illegally transported. Defendant's construction of the statute leaves seized liquor in limbo with no clear specification of its disposition.

---

[1] The sentence would be clear if the word "alone" appeared after the word "seized." Even without this word, we conclude that the intent is the same.

[2] Although it is not determinative in this context, we note that most states provide for the forfeiture of liquor transported without a permit or proper bill of lading. See, e.g., Colo. Rev. Stat. Ann. § 12-47-906 (1997); La. Rev. Stat. Ann. §§ 26:368, 26:372 (West 1989); Mass. Gen. Laws Ann. ch. 138, §§ 30H, 50 (West 1991) (originally enacted in 1933, prior to Vermont's statute); N.H. Rev. Stat. Ann. §§ 179:2, 179:3 (1990).

■ We are not persuaded by defendant's argument that because illegal transport of spirituous liquor is also a crime under 7 V.S.A. §§ 63(a) and 652, the Legislature did not intend that the liquor be forfeited. Proceedings against the person charged with a violation of the liquor laws and those against the property seized are separate and distinct. See *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363 (1984); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237 (1972). Forfeiture of contraband is a civil in rem action that is intended to take the product out of the stream of commerce, rather than to punish the person who owns or possesses the product. See *One Assortment of 89 Firearms*, 465 U.S. at 364. Thus, the Legislature's decision to make illegal transport of liquor a crime does not preclude forfeiture of the illegally transported liquor or suggest that the Legislature intended that forfeiture not be available as a sanction.

Next, the Tribe argues that even if the liquor was subject to forfeiture, this remedy should not be invoked against the Tribe because the independent shipper (Advantage) was responsible for obtaining a § 63(a) permit or ensuring that a proper bill of lading was on board the truck. In arguing for an innocent owner defense to forfeiture, the Tribe relies on the language of § 568 that forfeiture is authorized only if the liquor is "*intended* for sale, distribution, or use contrary to law." See 7 V.S.A. § 568 (emphasis added). It argues that because it had no intent to conduct any of these activities, an innocent owner defense protects it from the transgressions of its independent shipper. The trial court rejected this argument because the Legislature did not explicitly establish this defense for owners of seized alcohol, as it has for the innocent owners of vehicles used in the illegal transport of liquor. See 7 V.S.A. § 574.

■ Much of the force of the Tribe's argument is reduced by our holding that forfeiture is authorized by § 572. Thus, the grounds for forfeiture include illegal transport, see *id.* § 571, and the intent language on which the Tribe relies is inapplicable. We also agree with the trial court, however, that the explicit provision of an innocent owner defense solely for the owner of the conveyance of liquor being illegally transported demonstrates that the Legislature did not intend such a defense for the owner of the liquor. See *Grenafege v. Department of Employment Sec.*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (under precept of "expressio unius est exclusio alterius," where Legislature imposed restriction in part of the legislative scheme, and

none in other parts, "where it did not say so it intended no such restriction").

Next, the Tribe contends that § 568 is unconstitutionally vague and the court erred in forfeiting the Tribe's liquor under it. As we held above, the State's right of forfeiture is based on § 572, which has its own grounds. Thus, the Tribe's attack on the vagueness of the language of § 568 is misdirected.

We recognize, however, that the Tribe is unlikely to find sufficient specificity in § 572, and it would have challenged that statute had it been aware that we would rely on it. Indeed, we acknowledged that the statute is ambiguous and arrived at its meaning as a best fit for the statutory scheme. Thus, we address the merits of the Tribe's challenge.

The basic constitutional principle is described in *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

(Footnotes omitted.) Although the constitutional rule may apply in civil contexts the "test is less strict where the regulation is economic and the [aggrieved party] can seek clarification of its meaning or resort to administrative processes." *Rogers v. Watson*, 156 Vt. at 491, 594 A.2d at 414.

We need not dissect the statutory language in this case because we conclude that the constitutional prohibition does not apply to this challenge. The Tribe is not arguing that the relevant prohibition is vague, but instead that the remedy statute is vague. The Tribe argues that a person of common intelligence could not determine from the statute whether the liquor was subject to forfeiture. The Tribe does not challenge that it knew, or should have known, that transport of liquor through Vermont without a bill of lading that complied with the LCB policy was unlawful. Thus, it was fully able to conform to the legal standard and did not face a trap for the innocent.

■ We see no reason to extend the void-for-vagueness rule to the scope of a remedy. The owner of the liquor is fully able to determine whether its conduct is lawful and can obtain advice from the state in making this determination. It stretches the limits of due process to require that it also know in advance the possible remedies if it chooses to violate the law. Indeed, although prosecutorial and law enforcement discretion in defining what is criminal is undesirable, we do grant prosecutors broad discretion in determining what remedy to pursue.

Finally, the Tribe argues that forfeiture of the liquor represents an excessive fine in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Tribe argues that seizure and forfeiture of all 1650 cases of liquor, valued at approximately $100,000, is not proportional to the offense as required by *United States v. Bajakajian*, 524 U.S. 321, 336, 118 S. Ct. 2028, 2037 (1998) (amount of punitive forfeiture may not be grossly disproportionate to gravity of offense).

Whether a forfeiture is subject to Eighth Amendment analysis turns on whether the forfeiture is a punishment or is remedial. See *Austin v. United States*, 509 U.S. 602, 619-22 (1993); *Tellevik v. Real Property Known as 6717 100th Street S.W.*, 921 P.2d 1088, 1092 (Wash. Ct. App. 1996). As the Supreme Court explained in *Austin*, the states and federal government took from the English law the in rem civil forfeiture proceeding. See 509 U.S. at 613. This proceeding is based on the legal fiction that "'the thing is primarily considered the offender.'" See *id.* at 615 (quoting *J.W. Goldsmith, Jr. — Grant Co. v. United States*, 254 U.S. 505, 511 (1921)). The statutory scheme in this case involves the use of a civil in rem proceeding, brought by the State, to forfeit liquor, property used to transport liquor and other related property. See 7 V.S.A. §§ 568, 572.

*Austin* teaches, however, that the characterization of the proceeding as civil does not exempt forfeitures from the restrictions of the Eighth Amendment's excessive fines clause. The Supreme Court held that civil forfeitures which are intended to punish, in whole or in part, are subject to the clause. See 509 U.S. at 622. It concluded that in the case before it the forfeiture of real property used to facilitate the commission of a drug crime was punitive in part and subject to the excessive fines clause. See *id.*

The trial court in this case distinguished *Austin* and held that the civil forfeiture of the illegally transported liquor is not punishment

because the statute does not give the owner a defense based on innocence, the illegally transported liquor has become contraband, and the forfeiture remedy is part of a scheme to control the transport and delivery of liquor in Vermont. Part of this analysis relies on *Austin*'s holding that "we have recognized that the forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society." *Id.* at 621.

The *Austin* analysis was recently applied in *Bajakajian*, where the government sought forfeiture of $357,144 that defendant sought to take from the United States without reporting it. The applicable statute provided that a person convicted of the crime of willful failure to report exported currency in excess of $10,000 would forfeit to the United States property involved in the offense. The Supreme Court held that the forfeiture of all the money being exported without reporting involved punishment and violated the excessive fines clause. See 524 U.S. at 339-40, 118 S. Ct. at 2039.

In *Bajakajian*, the government proceeded against the defendant based on a criminal conviction. The Court found "[t]he forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners." *Id.* at 332, 118 S. Ct. at 2035. It held that in personam forfeitures of the type before it involve punishment and are subject to the excessive fines clause. In reaching this result, the Court carefully distinguished in rem civil forfeiture proceedings in which the government proceeded against the property rather than an individual.

If the State were proceeding against the truck used to transport the liquor, we would agree with the Tribe that the excessive fines clause applies because the Legislature has provided an innocent owner defense for the transporter, 7 V.S.A. § 574, and the property is not the regulated liquor. We conclude, however, that the forfeiture in this case is wholly remedial and not subject to the clause.

■ This case involves an in rem civil forfeiture proceeding as distinguished in *Bajakajian* and the type of property distinguished in *Austin*. The State proceeded against the liquor and not its owner. The Tribe has not been charged with a crime. The fact that the Tribe is an innocent owner of the liquor is not a defense. The property is the instrumentality of the crime. See *Bajakajian*, 524 U.S. at 333, 118 S. Ct. at 2036 (instrumentality is sine qua non of crime); cf. *Beer House Distrib., Inc. v. Huddleston*, 854 S.W.2d 881, 883-84 (Tenn. Ct. App. 1992) (where beer wholesaler could not sell brand of beer it possessed, beer was contraband). The value of the property can be

viewed as liquidated damages for the costs to the State of enforcing its liquor control laws. See *Payne v. Sheets*, 75 Vt. 335, 349, 55 A. 656, 661 (1903) (monetary forfeiture "[u]nder the statute . . . is given to the party aggrieved not as a penalty, but as cumulative damages for his injuries suffered"). We hold that under *Austin* and *Bajakajian* the forfeiture is remedial, rather than punitive, and not subject to the excessive fines clause of the Eighth Amendment.

*Affirmed.*