2009 VT 68




In re Rusty Nail Acquisition, Inc
(2008-338)


 


2009 VT 68


 


[Filed 26-Jun-2009]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier,
 Vermont05609-0801
of any errors in order that corrections may be made before this opinion goes to
press.


 


 



 
 2009 VT 68

 

  



 
 No. 2008-338

 

  



 
 In re Rusty Nail Acquisition,
 Inc.

 

 
 
 Supreme Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
  

 

 
 
 Liquor Control Board

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 February Term, 2009

 

 
 
  

 

 
 
  

 

 
 
 Walter
 E. Freed, Chair

 

 
 
  

 

 Russell D. Barr and Daniel A. Seff of Barr & Associates,
P.C., Stowe, for Appellant.


 


William H. Sorrell, Attorney General, and Jacob A. Humbert,
Assistant Attorney General,


  Montpelier, for Appellee.


 


 


PRESENT:  Reiber, C.J., Dooley, Johnson, Skoglund and
Burgess, JJ.


 


 


¶ 1.            
BURGESS, J.  The Rusty Nail, a licensed bar in Stowe,
appeals the Liquor Control Board’s conclusion that the bar violated a Board
regulation by allowing two intoxicated patrons to loiter on the premises. 
We affirm.


¶ 2.            
In February 2008, a team of liquor control investigators carried out an
inspection of all licensees on the Stowe Mountain Road, including the Rusty
Nail.  After observing licensee’s dance floor from an upstairs balcony for
approximately ten minutes, the team determined that one male patron appeared
intoxicated.  They based this determination on his aggressive dancing,
difficulty standing up, and general unruly behavior.  


¶ 3.            
After watching him for several minutes, members of the team escorted the
man from the dance floor and brought him to the attention of the bar’s
manager.  During this interaction, the man’s friend approached, and the
team observed signs of intoxication from both patrons.  The manager
indicated that he did not dispute that the two men were intoxicated.  The
team instructed the manager to see that the two men got a ride home and then
left, having concluded their inspection.


¶ 4.            
The team reported a violation of General Regulation 17 (GR17),[1]which states: 


No alcoholic
beverages shall be sold or furnished to a person displaying signs of
intoxication from alcoholic beverages or other drugs / substances.  No
alcoholic beverages may be consumed on the licensed premises by any person
displaying such signs of intoxication.  No person displaying such signs of
intoxication shall be allowed to loiter on the licensed premises.


 


Department of
Liquor Control General Regulation 17, 4 Code of Vermont Rules 26 020 016-1 (2005). 
The matter was referred to the state Liquor Control Board, which administers
alcohol service licenses in the state and adjudicates alleged violations of the
General Regulations.  Licensee was cited for violating the last sentence
of GR17, which prohibited allowing intoxicated persons to loiter on the
premises, and a contested hearing was held. Licensee disputed the violation on
two grounds, contending that the patrons were not intoxicated—or at least not
intoxicated enough for licensee’s management to have noticed them—and also
positing that the GR17 loitering prohibition was void for vagueness.  The
Board concluded that the meaning of “loiter” in the context of GR17 was clear
and unambiguous, thus validating the constitutionality of the regulation, and
ruled that it was or should have been apparent that the patrons were
intoxicated in violation of the ban on intoxicated loitering in GR17. 
Licensee appealed.


¶ 5.            
Licensee makes three arguments on appeal.  It asserts, first, that
the regulation exceeds the Board’s enabling legislation.  Second, it
contends that GR17 is void for vagueness, both on its face and as
applied.  Third, it argues that the Board committed reversible error by
deciding that the events in question violated the rule’s prohibition on drunken
loitering.  We address each in turn.


I. Whether the Regulation Exceeds the Board’s Enabling Statute


¶ 6.            
By statute, the Board has the authority to promulgate and enforce
regulations relating to the “ ‘furnishing, purchasing, selling, . . .
delivering and possessing of alcohol.’ “  In re Club 107, 152 Vt.
320, 323, 566 A.2d 966, 967 (1989) (quoting 7 V.S.A. § 104(8)); see also 7
V.S.A. § 104(5) (giving the Board authority to make regulations necessary
for the execution of its powers and duties).  For a regulation to be a
permissible exercise of this statutory authority, there must be a “nexus
between the regulation and the consequences of excessive use of alcohol.”
 In re Con-Elec Corp., 168 Vt. 576, 576, 716 A.2d 822, 823 (1998)
(mem.) (quotation omitted).  Thus, the issue here is whether GR17 is
connected to, and is therefore a proper exercise of the Board’s authority for,
regulating the overuse of alcoholic beverages, or if it impermissibly regulates
an unrelated activity—namely, mere loitering—that is beyond the Board’s
authority.


¶ 7.            
We have stated that Board regulations exceed the Board’s Title 7
authority when the regulations force the Board to define and regulate matters
over which it has no expertise or authority.  In Club 107, this
Court invalidated a Board regulation that prohibited certain activities it
labeled as “obscene, lewd, or indecent entertainment” at licensed
establishments because the Board had no expertise or authority to regulate
obscenity.  152 Vt. at 323-25, 566 A.2d at 967-69.  We struck down
the obscenity regulation because we concluded that the Board should not be in
the position of defining obscenity in order to enforce its alcohol
regulations.  Club 107 emphasized that there must be a nexus
between the exercise of the Board’s authority and either the consequences of
excessive alcohol use, or a specifically granted power of the Board, in order
for the exercise of the Board’s authority to be valid.  Id. at 324,
566 A.2d at 968.  “[T]he mere coincidence of the sale of liquor and some
other activity is not—by itself—sufficient to allow the Board to regulate the
other activity.”  Id.  Although the Legislature directed that
Title 7 “ ‘is for the protection of the public welfare, good order, health,
peace, safety and morals of the people of the state, and all of its provisions
shall be liberally construed for the accomplishment of the purposes set forth
herein,’ “  we are mindful that “the Board’s authority is not
unrestrained.”  Id. at 324-25, 566 A.2d at 968 (quoting 7 V.S.A.
§ 1).


¶ 8.            
General Regulation 17, however, is quite different from the obscenity
regulation at issue in Club 107.  Its purpose is not to regulate or
prevent loitering per se, but to prevent intoxicated persons from
loitering in a licensed establishment.  Therefore, the Board need not
exceed its expertise or authority to enforce the regulation.  Instead, the
inspectors need only to observe patrons for signs of intoxication, a matter
which is clearly within the Board’s expertise.  When individuals in a
licensed establishment exhibit commonly recognized signs of intoxication, and
the licensee takes no action to remove them, the licensee is in violation of
GR17.  Enforcing the regulation, therefore, depends solely upon observing
demonstrably intoxicated patrons remaining inside licensed
establishments.  Because the Board and its inspectors are well-qualified
to judge the signs that indicate intoxication, the Board is not required to
define anything beyond its area of expertise in order to enforce the
regulation.


¶ 9.            
Furthermore, GR17 does not, as licensee argues, attempt to regulate
loitering generally in contravention of the Board’s statutory authority to
regulate only intoxicating liquors.  In SBC Enterprises, Inc. v. City
of South Burlington Liquor Control Commission, 166 Vt. 79, 84, 689 A.2d
427, 430 (1996), we overturned a decision by a city’s liquor control commission[2] to revoke a club’s liquor license, which
was conditioned on the club’s compliance with all city ordinances, because the
commission was not authorized to use its powers to enforce municipal public
indecency regulations beyond the immediate realm of controlling alcoholic
beverage sales and consumption.  Licensee argues that GR17 similarly
forces licensed establishments to prevent loitering, which the Legislature has
neither prohibited directly nor authorized the Board to prohibit.  But
this case is distinguishable from SBC Enterprises because it does not
concern the licensee’s failure to enforce collateral ordinances or regulations
issued by another governmental entity.  The Board cited licensee for
violating a Board regulation.  Further, under GR17, the Board does not
place conditions on licensees forcing them to prohibit loitering generally at
their establishments.  Instead, the regulation forbids licensees from
allowing patrons to loiter when they appear intoxicated, which is well within
the power delegated to the Board.  


¶ 10.        
Unlike both Club 107 and SBC Enterprises, where liquor
control authorities attempted to regulate matters wholly unconnected to alcohol
consumption and beyond the scope of the Board’s enabling legislation, the regulation
at issue here specifically ties together loitering with the state of
intoxication, bringing it squarely within the Board’s purview.  There is
the necessary nexus between the regulation and the consequences of excessive
use of alcohol because the regulation prevents licensees from allowing only
intoxicated people to idle at their establishments, which are places where
intoxicated people may pose a threat to themselves and to public safety. 
See In re DLC Corp., 167 Vt. 544, 548, 712 A.2d 389, 392 (1998)
(pointing out that the State may “permit the manufacture and sale of
intoxicating liquor under such conditions as will limit to the utmost its
evils” (quotation omitted)).  Although GR17 uses the word “loiter,” which
has a definition and connotation unrelated to the consumption of alcohol, the
regulation prohibits the licensee from tolerating only intoxicated loitering
and so directly relates to the Board’s enabling legislation.  


¶ 11.        
We also accept the Board’s conclusion that removing intoxicated patrons
from a licensed establishment furthers the Board’s mandate to facilitate sales
of alcoholic beverage in such a manner as to “discourage intoxication and
encourage temperance.”  In re Club 107, 152 Vt. at 324, 566 A.2d at
968 (quotation omitted).  Removing intoxicated individuals encourages
patrons to consume moderately to avoid being ejected, and reduces the
likelihood of further consumption by those who appear already
intoxicated.  It also promotes the general welfare by removing intoxicated
persons from the confines of an establishment where they may pose a threat to
other people’s safety.  Further, given the nature of licensed
establishments as highly regulated environments, the Board’s authority should
be construed broadly when applied to regulating the presence of intoxicated
persons within such establishments.  See 7 V.S.A. § 1. 
Accordingly, we conclude that GR17 does not exceed the Board’s enabling
legislation.


II. Whether GR17 is Void for Vagueness


¶ 12.        
The second issue is whether the term “loiter” is impermissibly vague in
the context of GR17.  Ordinarily, this Court upholds the Board’s
interpretation of its regulations and as well as the statutes within its area
of expertise, and will reverse only when there is a compelling indication of
error.  In re Kacey’s, Inc., 2005 VT 51, ¶ 5, 178 Vt. 567, 879 A.2d
450 (mem.).  However, the regulation’s vagueness is a constitutional
question based on the Due Process Clause of the Fourteenth Amendment to the
United States Constitution.  State v. Trucott, 145 Vt. 274, 279,
487 A.2d 149 152 (1984).  The Due Process Clause is not an area of the
Board’s expertise, and consequently, we review this legal issue de novo. 
Statutes and, by extension, regulations, are unconstitutionally vague when they
either (1) fail to provide sufficient notice of what conduct is prohibited, or
(2) authorize or encourage arbitrary and discriminatory enforcement by failing
to provide explicit standards.  City of Chicago v. Morales, 527
U.S. 41, 56 (1999); In re 1650 Cases of Seized Liquor, 168 Vt. 314, 324,
721 A.2d 100, 107 (1998).  


 


 


A. 
Threshold Issues


¶ 13.        
We use the same void-for-vagueness test for administrative regulations,
such as GR17, as we do for statutes.  See Rogers v. Watson, 156 Vt.
483, 491-92, 594 A.2d 409, 413-14 (1991) (applying the two-pronged
void-for-vagueness test to an Agency of Natural Resources regulation). 
The vagueness test is “less strict” when applied to a regulation that affects
economic interests, not constitutional rights, and when “the [aggrieved party]
can seek clarification of its meaning or resort to administrative processes.”[3]  Id. at 491, 594 A.2d at 414;
see also Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972)
(stating that “greater leeway” is allowed “[i]n the field of regulatory
statutes governing business activities, where the acts limited are in a narrow
category”).


¶ 14.        
  One of the main reasons for a less strict application of the
vagueness doctrine in the context of economic regulations is that the Vermont
Administrative Procedures Act (APA) provides regulated entities and the public
with multiple opportunities to participate in the rulemaking process. 
Regulations such as GR17 are developed in agency rulemaking processes governed
by the APA, which contains several provisions aimed at allowing members of the
public concerned about the effect of a rule on their businesses to comment on
and request clarification of regulations. 3 V.S.A. §§ 836, 840(e).  These
opportunities are available both during the rulemaking process and after a
regulation is adopted.  Further, the APA requires agencies to respond to
requests for rule clarifications with declaratory rulings.  Id. §
808.  Thus, there is no reason for any affected entity to be unclear about
a regulation’s applicability.  Because of these opportunities to request
changes and clarification from the agency responsible for making and
implementing the regulations, the concern that ordinary people will not be able
to understand what conduct is prohibited is greatly tempered in the
administrative regulatory context.  


¶ 15.        
Because these APA provisions are available to all regulated entities “we
are unlikely to intervene for persons who had the opportunity to clarify their
responsibilities and did not use it.”  In re S.M., 2003 VT 41, ¶
15, 175 Vt. 524, 824 A.2d 593 (mem.) (quotation omitted).  In this case,
instead of using any of the APA procedures, or using the Board’s training
program that is administered to all licensees, including the employees of the
Rusty Nail, to clarify the meaning of GR17, the Rusty Nail waited until it was
cited for violating the regulation to challenge its constitutionality. 
This is similar to the situation in Rogers, where the defendants, upon
learning that they could not obtain a permit for a septic system, immediately
tried to eliminate the need for one.  Rogers, 156 Vt. at 492, 594
A.2d at 414.  In that case, we denied the defendants’ vagueness challenge
to the applicable regulations, in large part because there was little excuse
for uncertainty given the options that were available to those who desired to
understand the rule.  Id. at 491, 594 A.2d at 414; see also Benning
v. State, 161 Vt. 472, 484, 641 A.2d 757, 763 (1994) (stating that the
failure to request clarification of an administrative regulation is fatal to a
post-hoc facial vagueness challenge, but nevertheless analyzing the regulation
for vagueness).  Our cases thus indicate that we approach a vagueness challenge
such as the one here with a critical eye.  


B.  Whether GR17 Fails to Apprise Citizens of Prohibited
Conduct


¶ 16.        
Licensee alleges that the word “loiter” in GR17 fails to apprise
licensed establishments of what particular conduct is prohibited, which, if
true, would render it impermissibly vague.  State v. Beauregard, 2003 VT 3, ¶ 8, 175 Vt. 472, 820 A.2d 183. 
“Loiter” is not defined in the context of GR17, but this does not render it
impermissibly vague per se.  See Brody v. Barasch, 155 Vt. 103,
110-11, 582 A.2d 132, 137 (1990).  Statutes or regulations need not
“detail each and every act or conduct that is prohibited” in order to provide
fair notice of what behavior they cover.  Id. at 111, 582 A.2d at
137.  Rather, “[s]tatutory language that conveys a definite warning as to
proscribed conduct when measured by common understanding and practices will
satisfy due process.”  Id.  


¶ 17.        
In this case, licensee attempts to isolate the word “loiter” from the
context of the entire regulation in which it is used, and asks us to ignore its
admitted understanding of the overall regulation, and instead focus on some
alleged uncertainty over the definition of the term.  “Loiter” is
variously, but commonly, understood to mean linger, tarry, delay, or
dawdle.  Loitering is often associated with idleness, and it is not lost
on this Court, and presumably not to the Board, that patrons can be reasonably
expected to spend leisure time in a taproom engaged in no particularly
constructive occupation.  The gravamen of GR17, however, is not on how
customers spend their time in a licensed establishment, but whether the
operators allow them to spend time there while intoxicated.  


¶ 18.        
Both the claim of ambiguity, and the need for closer definition, is belied
by licensee’s own understanding of the rule in this case.  The record
reveals that licensee’s reading of GR17 is entirely consistent with the Board’s
construction.  The Board concluded that GR17 means that “when a licensee
has an intoxicated person on the premises who is displaying signs of
intoxication they shall not be allowed to remain on the licensed
premises.”  This is essentially the same as the understanding expressed by
the bar’s manager in his testimony before the Board that “[a]n intoxicated
person is not allowed to be in our club.”  The manager’s testimony showed
that, practically speaking, GR17 sowed no confusion over drunken loitering,
despite the lack of further definition, but rather, prohibited a licensee from
allowing an intoxicated person to remain on the licensed premises.  Since
the licensee’s manager articulated the same meaning of the regulation as that
expressed by the Board, and fairly appearing in the rule itself, we conclude
that GR17 adequately apprised licensee of the conduct prohibited.


C. 
Whether GR17 Authorizes or Encourages Arbitrary Enforcement


¶ 19.        
Due process also requires that GR17 not subject licensees to arbitrary
and discriminatory enforcement.  Thus, in addition to offering a person of
ordinary intelligence a reasonable opportunity to know what is prohibited,
regulations must also provide explicit standards for the law enforcement
officers who apply them.  Sec’y, Vt. Agency of Natural Res. v. Irish,
169 Vt. 407, 411, 738 A.2d 571, 575-76 (1999); see also Papachristou,
405 U.S. at 168 (emphasizing that the latter requirement prevents law
enforcement officers from exercising unfettered discretion over whom to
arrest).  Licensee alleges that the loitering language of GR17 violates
“the requirement that a legislature establish minimal guidelines to govern law
enforcement,” Morales, 527 U.S. at 60 (quotation omitted), because it
offers no time standards for investigators to use in determining when customers
are impermissibly being allowed to loiter.


¶ 20.        
Contrary to licensee’s assertions, the regulation does not allow the
Board to invoke an amorphous and undefined durational aspect of “loitering,”
which could create a risk of arbitrary punishment.  Again, the regulation
is concerned not with loitering patrons, but with intoxicated customers staying
on the premises.  GR17 specifically requires a patron be intoxicated and
allowed to remain on the premises before a violation may be found.  This
plain and unambiguous requirement defines the prohibited conduct with
sufficient clarity to prevent arbitrary enforcement.  See, e.g., Yuen
v. Mun. Court, 125 Cal. Rptr. 87, 92 (Ct. App. 1975) (upholding an
ordinance prohibiting loitering while carrying a concealed weapon because the
requirement of carrying a concealed weapon adequately puts both violators and
officers on notice of what conduct is prohibited); State ex rel. Williams v.
City Court, 520 P.2d 1166, 1170 (Ariz. Ct. App. 1974) (upholding an
ordinance prohibiting loitering in a public place for the purpose of begging
because loitering was only prohibited when combined with begging, which puts a
reasonable person on notice as to exactly what conduct is prohibited). 


¶ 21.        
Furthermore, we agree with the Board that “[t]he condition of noticeable
intoxication is specific and clearly demonstrable, and is not unreasonably
subject to arbitrary interpretation.”  Investigators must see patrons
showing signs of alcohol impairment, rather than just tarrying, before they can
cite a licensee for violating GR17, so licensees are not subject to the whims
of the investigators.  Since the patron must exhibit signs of intoxication
before the licensee can be cited for violating the regulation, the licensee
remains capable of preventing a violation through diligent oversight, which is
exactly what the regulation encourages.  


¶ 22.        
As licensee points out, at least one other court has found
unconstitutional vagueness in a statute similar to the regulation at issue
here.  In an Oklahoma appellate court decision, a statute that prohibited
a licensee from “permitting any intoxicated person to loiter in or around
[licensee’s] place of business” was struck down as vague.  Curtis v.
Peterson (In re Beverage License No. ABL-93-26), 899 P.2d 660,
661-62 (Okla. Civ. App. 1995).  The court concluded that the statute did
not provide a workable standard for determining the point at which “the
authorized customer become[s] the unauthorized loiterer.”  Id. at
662.  As an initial matter, the case is distinguishable because it involves
a vagueness challenge to a statute, not a regulation.  As discussed above,
we afford regulations greater leeway in a vagueness challenge because the APA
provides numerous opportunities for interested parties to clarify the meaning
of regulations.  We further disagree with the Oklahoma court’s decision
because we read the language, meaning, and intent of GR17 as sufficiently clear
and specific enough to prevent arbitrary enforcement.  Authorized
customers become unauthorized loiterers for the purposes of GR17 when they show
outward signs of intoxication.  This is an acceptable standard for
investigators to apply, and one upon which licensees may rely in order to
conduct their business without violating GR17.


¶ 23.        
  Licensee also contends that GR17 is unconstitutionally vague
as applied. Generally, a party who has clearly violated a statute or regulation
that is not facially vague cannot challenge it for vagueness unless fundamental
rights are implicated.  Vill. of Hoffman Estates v. Flipside, Hoffman
Estates, Inc., 455 U.S. 489, 494-95 (1982).  In this case, the facts
show that licensee clearly violated GR17.  The inspection team allowed the
management more than ten minutes to remove the intoxicated patron before
intervening.  Allowing an obviously intoxicated person to remain on
regulated premises for ten minutes is a violation of the Board’s application,
and the licensee’s understanding, of the regulation. Therefore, licensee cannot
argue that it was not given enough time to remove the intoxicated patrons
before the team took action.  


¶ 24.        
Likewise, licensee’s argument that a patron engaging in any activity,
such as dancing or playing pool, is not loitering is incorrect in this
context.  Debate over whether dancing, billiards, or simply stepping on a
bar rail is gainful, as opposed to idle, activity is unnecessary.
 Licensee’s manager agreed that GR17 meant “[a]n intoxicated person is not
allowed” to remain on the premises, and he did not dispute that the two
customers were demonstrably drunk.  Thus, licensee recognizes that any
person showing signs of intoxication must be asked to leave, regardless of what
activities he or she is engaged in at the time.  The regulation is valid
on its face, as understood, and as applied to the licensee.


III.
Whether the Board’s Conclusion that a Violation Occurred Should be Reversed


¶ 25.        
Finally, licensee argues that the Board’s conclusion that it violated
GR17 should be reversed.  The Board’s factual findings will not be
overturned unless they are clearly erroneous and there is no reasonable basis
to support them.  In re Capital Inv., Inc., 150 Vt. 478, 480-81,
554 A.2d 662, 664 (1988).  Furthermore, “[a]bsent compelling indications
of error, interpretations of administrative regulations or statutes by the
agency responsible for their execution will be sustained on appeal.”  Id.
at 482, 554 A.2d at 665.  There is ample evidence in the record to support
the conclusion that the individuals were intoxicated, and we have no basis to
overturn that conclusion.  Also, since the rule is violated whenever a
licensee allows any patron who exhibits signs of intoxication to remain in a
licensed establishment, we reject licensee’s argument that one who is wildly
dancing while showing signs of intoxication cannot be considered loitering
while impaired for the purposes of GR17.  Such a person poses a danger to
himself and others, and is precisely the person whom the Board has determined
should be removed from licensed establishments in order to protect the public
safety.[4]


¶ 26.        
Furthermore, we have said before that licensees have an affirmative duty
to become aware of and prevent regulatory violations.  See In re
Kacey’s, 2005 VT 51, ¶ 5 (concluding that the term “permitted or
suffered”—used in a regulation in a manner similar to “allowed” in GR17—charges
the licensee with an affirmative duty to prevent violations).  Thus,
licensee’s argument that “allowed” in GR17 should be interpreted to mean that a
licensee must knowingly allow an intoxicated person to remain in the
establishment is unavailing.  Licensees cannot avoid responsibility by
failing to notice at least one obvious drunk for over ten minutes.  They
must diligently observe their patrons and will violate GR17 if they know or
should know that intoxicated patrons are present in their establishments but
fail to remove them promptly.  Licensee failed to meet this
responsibility. 


Affirmed.



 
  

 

 
 
  

 

 
 
 FOR
 THE COURT:

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Associate Justice

 

  


 


 














[1] 
GR17 has been amended, and recodified as General Regulation 18.  It now
reads: 


 


No alcoholic
beverages shall be sold or furnished to a person displaying signs of intoxication
from alcoholic beverages or other drugs / substances.  No alcoholic
beverages may be consumed on the licensed premises by any person displaying
such signs of intoxication.  No person displaying such signs of
intoxication shall be allowed to stay on the licensed premises, except
under direct personal supervision by a licensee or his or her employees in a
segregated nonpublic area when the patron’s immediate departure could be
expected to pose a risk of bodily injury to the patron or any other person.


 


Department of Liquor Control
General Regulation 18, 4 Code of Vermont Rules 26 020 016-1 (2009), available
at http://liquorcontrol.vermont.gov/enforcement/regulations/regchanges.pdf
(emphasis added).


 







[2]  In the
context of alcoholic beverage regulation, local control commissions are
subordinate agencies constituted under the paramount authority of the Liquor
Control Board.  7 V.S.A. §§ 166-167; SBC Enters., 166 Vt. at
83, 689 A.2d at 429-30.  Thus, while SBC Enterprises involves a
municipal liquor control commission, it is instructive to the case at bar
because commissions operate under, and are bound by, the same laws as the
Board.







[3] 
While licensee is correct that criminal prosecution is possible for a willful
violation of Board regulations, 7 V.S.A. § 667(b), licensee was not
charged with a willful violation here, and even if it had been, distributing
liquor is not constitutionally protected conduct, so we grant some leeway to
regulations affecting it.  See Ackerman v. Kogut, 117 Vt. 40, 47,
84 A.2d 131, 136 (1951) (“[T]raffic in intoxicating liquor is a mere matter of
privilege because it is of a character tending to be injurious.”).  


 







[4]
 As if to emphasize this point, soon after leaving licensee’s
establishment, the two customers in question were found by police meandering
down the middle of Route 100.